DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 9173.   Department Two.   September 6, 1911.]

ELIZABETH L. COFFMAN *et al.*, *Respondents*, v. SPOKANE CHRONICLE PUBLISHING COMPANY *et al.*, *Appellants.*[1]

PARTIES — DEFENDANTS — PURCHASERS — INTERVENTION — LIBEL. Where an action of libel has been brought against a newspaper publishing company, successors in interest of the publishing company are not interested in the subject-matter of the action and therefore are not entitled to intervene, where the property had been conveyed to them with covenants against incumbrances, and they had not assumed any of its debts.

LIBEL AND SLANDER—ACTIONS—EVIDENCE—BURDEN OF PROOF.   In an action for a newspaper libel by the publication of matter libelous *per se*, in which the defendant denied certain material allegations of the complaint, but admitted the publication and pleaded mistake and a retraction, the burden of proof is upon the plaintiff, and he has the right to open and close.

LIBEL AND SLANDER — PUBLICATION — RETRACTION—REQUEST FOR—DAMAGES—MITIGATION.   No duty rests upon one who is libeled by a newspaper to request the publication of a retraction or other articles reducing the plaintiff's damages, and a mere offer to retract does not deprive the libeled party of his right to recover damages.

LIBEL AND SLANDER—DAMAGES—EXCESSIVE VERDICT.   A verdict for five thousand dollars for a newspaper libel, by a newspaper of wide circulation, seriously reflecting upon the character of a young woman, will not be set aside as excessive, where the trial judge refused to set aside the verdict.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered August 1, 1910, upon the verdict

[1]Reported in 117 Pac. 596.

of a jury rendered in favor of the plaintiffs, for five thousand dollars, in an action for libel.   Affirmed.

*H. M. Stephens,* for appellants.

*Graves, Kizer & Graves, Reese H. Voorhees, F. M. Dudley,* and *W. E. Cullen,* for respondents.

Crow, J.—Action by Elizabeth L. Coffman and Thomas J. Coffman, her husband, against the Spokane Chronicle Publishing Company, a corporation, to recover damages arising from a libelous article published by the defendant. The defendant, being the owner of the Spokane Chronicle, a daily newspaper, published certain articles on September 18, 1908, January 9, February 27, and May 8, 1909, as follows:

"Young Lady Claims Breach of Promise.

"For failure to carry out his promise to make her his wife, Jeanette DeCamp has started suit against Thomas J. Coffman of the Howard Coffman Implement Company to recover damages to the amount of $25,000. The young woman claims that she first met the defendant in March, 1903, about two weeks after the death of his wife. The defendant showed her attentions and talked of marriage, but said it would not be best to marry so soon after the death of his wife, states the complaint. The proposed marriage was postponed, and in the meantime, the plaintiff alleges, the man who had promised to wed her accomplished her downfall. For several months, she claims, at his suggestion, she conducted a lodging house, where she and the defendant lived as husband and wife."

"woman's sin does not excuse man.

"Kaufmann Can't Shut Out Her Story Because of Her Fault.

"In the breach of promise suit of Jeanette DeCamp against Thomas J. Kaufmann of the implement firm of Howard Kaufman-Kauffmann Co., in which the woman asks for $25,000 damages, an important ruling has been made by Judge W. A. Huneke on a law point seldom raised, and on which there are few precedents. The woman, in addition to the breach of promise to marry, pleads her own ruin which was accomplished, she alleges, by the defendant during

their engagement and by reason of his repeated promises of marriage. The defendant moved to strike out of the com- plaint the paragraph in which the woman pleads her ruin, for the reason that such evidence was not admissible, the woman being equally guilty with the man, if such a relation be proven, and that the matter is barred by the statute of limitation from the case. With the few authorities at hand, and with the sentiment of society which in such cases is always in sympathy with the woman, the court has no hesitancy in ruling that the seduction can be pleaded and is actionable for damages with the breach of promise pleaded. As to the limitation, the court holds that the two grounds of action are so closely associated that they cannot properly be sep- arated, and since the action for breach of promise is brought within the limited period, the other cannot be barred on that ground. The plaintiff claims that their acquaintance began in 1903, and that in July of that year they had become en- gaged. The marriage was set and repeatedly postponed until November, 1907, when the woman was informed that her fiance had changed his mind and that it was all over between them."

"Judge Huneke this morning denied the motion of Jean- ette DeCamp to strike portions of the affirmative defense from the answer of Thomas J. Coffman, who the woman is suing for breach of promise and seduction. The paragraph to which the plaintiff objected and wished stricken, recites that the plaintiff had been at Colfax with one Draper, pass- ing as his wife; that she, during the summer of 1908, had been at Portland in company with Draper, going as his wife."

"Broke Promise, Settled Suit.

"Dismissed by stipulation, without costs to either party, is the fate of the $25,000 breach of promise suit of Jeanette M. DeCamp against Thomas J. Coffman, member of the Howard & Coffman Company, implement dealers. The first meeting of the parties, Miss DeCamp declares, was about April, 1903, when Coffman began showing her attentions. A few months later she accepted his proposal of marriage, but the wedding was postponed for one cause and another for over four years, until November, 1907, when he broke the engage- ment. Coffman admitted he had been infatuated by the plain- tiff and that in November, 1906, they became engaged, but no definite date was ever fixed for the marriage. About October,

1907, or nearly a year after the engagement, he claims Miss DeCamp accompanied Harry Draper, the detective, to Colfax, and there was introduced and passed as Draper's wife. Later, he declared, she spent several days in Portland in company with Draper, passing as his wife, and for a long time, he believes, had been the mistress of Draper."

After pleading the above articles, the complaint, in substance, alleges that, notwithstanding the knowledge the defendant company had with reference to the breach of promise suit, it, on May 28, 1909, printed in a conspicuous place on the first page of its newspaper, with heavy leaded display lines, a further article reading as follows:

"COFFMAN MARRIES WOMAN WHO SUED HIM.

"After having been sued by Miss Elizabeth J. Burns for $10,000 for breach of promise, and after having accused her of staying in Portland and Colfax as the wife of Harry Draper, Thomas Jefferson Coffman has decided to call bygones bygones and get married, and his bride is the woman whom he publicly accused of scandalous conduct. Miss Burns, whose home is at Hailey, Idaho, sued Coffman for breach of promise some months ago. Coffman filed an answer and cross-complaint accusing Miss Burns and Harry Draper of improper conduct and of pretending to be husband and wife. Both vehemently denied the accusation. The $10,000 breach of promise suit was settled out of court a few weeks ago, and the culmination of the affair is the issuing of the marriage license to Mr. Coffman and Miss Burns. Coffman, Miss Burns alleged in her suit, was engaged to be married to another woman."

It is further alleged the publication last mentioned was wanton, malicious, libelous, and defamatory. By its amended answer the defendant, after making denials and admitting the publication, affirmatively alleged that, by mistake and inadvertence, plaintiff's name was inserted instead of the name of the plaintiff in the breach of promise suit; that the publication was made without intent to wrong the plaintiffs or either of them, and that the defendant in its next issue of

May 29, 1909, published on the third page of its paper a correction article, reading as follows:

"HE DIDN'T MARRY WOMAN WHO SUED.

"Miss Janet De Camp, and not Elizabeth Burns, is the woman who sued Thomas Jefferson Coffman for $10,000, alleging breach of promise some months ago. Coffman accused Miss DeCamp and a detective of improper conduct at Portland, Ore., alleging that they pretended to be husband and wife. This charge was emphatically denied. Miss Burns is the young lady from Hailey, Idaho, who was recently married to Mr. Coffman. She is stated to be an estimable young woman, the daughter of a mining man."

During the progress of the action and before trial, Thomas Hooker and Henry Rising filed a motion, asking that they be substituted as parties defendant, or that, if the motion be denied, they be permitted to intervene. They also filed a complaint in intervention and answer. The motion was based upon a showing that they had succeeded to all property, rights, and franchises of the defendant; that the defendant was proceeding to disincorporate; that the property to which they had succeeded might become liable for the satisfaction of any judgment entered herein; that they would give security for any judgment obtained; and that they are the only persons other than plaintiffs now interested in the event of the action. In their complaint in intervention they made similar allegations, and by their answer they pleaded the identical defenses theretofore pleaded by the defendant corporation. Their motion was denied, and upon plaintiffs' motion, their complaint in intervention was stricken. On a trial of the issues between the plaintiffs and the defendant corporation, a verdict for $5,000 was returned in plaintiffs' favor, upon which judgment was entered. The defendant corporation has appealed. The interveners, Thomas Hooker and Henry Rising, have also appealed.

The appellants Hooker and Rising contend the trial court erred in striking their complaint in intervention. The controlling question thus raised is whether they were entitled to

intervene under Rem. & Bal. Code, §§ 202, 203. An examination of the authorities pertaining to this right makes it apparent that the doctrine of intervention now embodied in the code of this state was originally enacted in the code of Louisiana, from which it has since been substantially adopted by Washington, California, Iowa, Minnesota, South Dakota, and other states. What interest in the matter in litigation will authorize an intervention was considered in *Gasquet v. Johnson*, 1 La. 425, 431. The court said:

"This we suppose must be a direct interest by which the intervening party is to obtain immediate gain, or suffer loss by the judgment, which may be rendered between the original parties; otherwise the strange anomaly would be introduced into our jurisprudence, of suffering an accumulation of suits in all instances where doubts might be entertained, or enter into the imagination of subsequent plaintiffs, that a defendant against whom a previous action was under prosecution, might not have property sufficient to discharge all his debts."

It has been held that, to authorize an intervention, the interest of the intervener must be that created by a claim to the demand in suit of some part thereof, or a claim to or a lien upon property or some part thereof which is the subject-matter of the litigation. Pomeroy, Code Remedies (3d ed.), p. 488, § 429; *Brown & Sons v. Saul*, 4 Martin (La. N. S.) 434, 16 Am. Dec. 175. The supreme court of California, in *Horn v. Volcano Water Co.*, 13 Cal. 62, 73 Am. Dec. 569, construing an intervention statute similar to ours, and speaking through Mr. Justice Field, said:

"The interest mentioned in the statute, which entitles a person to intervene in a suit between other parties, must be in the matter of litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment."

See, also, 17 Am. & Eng. Ency. Law (2d ed.), 180; *Hindman v. Colvin*, 47 Wash. 382, 92 Pac. 139; *Gale v. Frazier*, 4 Dak. 196, 208; *Smith v. Gale*, 144 U. S. 509; *Dickson v. Dows*,

11 N. D. 407; *Lewis v. Harwood,* 28 Minn. 428; *In re Mc-Clellan's Estate* (S. D.), 129 N. W. 1037.

The appellants Hooker and Rising insist they are interested in the action on the theory that a judgment against the defendant corporation may hereafter become a charge upon the property which has been transferred to them. The property mentioned is no part of the subject-matter of this action, nor is there any allegation or showing that Hooker and Rising assumed any debt of the corporation, or contracted to pay any judgment that may be rendered against it. Their bill of sale conveying the property to them contains a covenant against incumbrances. This action for damages, arising from an alleged tort of the corporation, is one in which they have no direct interest. In *Lombard Inv. Co. v. Seaboard Mfg. Co.,* 74 Fed. 325, it was held that, as a general rule, one not a party to a suit cannot appear therein and be permitted to defend unless he has an interest in the litigation of a direct and immediate character. The appellants Hooker and Rising by their answer sought to interpose the identical defenses interposed by the corporation and which were ably presented and maintained by its counsel. The respondents, as parties plaintiff, were entitled to proceed with the prosecution of this action against the defendant corporation without interference from Hooker and Rising. The complaint in intervention was properly stricken. *In re McClellan's Estate, supra; Wightman v. Evanston Yaryan Co.,* 217 Ill. 371, 75 N. E. 502, 108 Am. St. 258.

Appellants contend the trial judge erred in denying to appellant corporation the opening and closing of the case. The answer admitted the publication, but denied other allegations of the complaint, which in part were that the publication was in a conspicuous portion of the paper under sensational headlines; that the article was false; that it was published wantonly and maliciously; that Elizabeth L. Coffman had never been accused of being unchaste or immoral; that she had sustained injury to her name and reputation; and that she had

sustained damages.  Appellants' theory seems to be ·that, the publication being admitted and the publication of a retraction being alleged, the burden ·devolved upon it. · 'It is conceded the ·publication of which respondents complain is libelous *per se*. · When such a publication is pleaded by a plaintiff and admitted by· the defendant, who seeks to just justify the same by ·further pleading its truth, the burden of proof might rest upon the defendant, for the reason that if he does not prove his case, malice will be inferred and the plaintiff will be entitled to recover.  *Hall v. Elgin Dairy Co.*, 15 Wash. 542, 46 Pac. 1049.  The truth of the published article has not been pleaded as justification ·in this action.  In *Fountain v. West*, 23 Iowa 9, 92 Am. Dec. 405, the answer to the complaint charging libel· admitted the publication, but denied malice, intentional publication, or damages alleged.  It was held that, under the issues thus framed, the plaintiff held the affirmative and was entitled to open and close.  *Mann v. Dempster*, 181 Fed. 76; *Vifquain v. Finch*, 15 Neb. 505, 19 N. W. 706; *Burckhalter v. Coward*, 16 S. C. 435; *Samples v. Carnahan*, 21 Ind. App. 55, 51 N. E. 425. · In every case ·where the general issue or a· general or· special denial is pleaded, ·the right to open and close is with the plaintiff, for then he has something to ·prove in the first instance, no matter what the controversy or what special defenses may be set up. *Pyles ·v. Piedmont etc. Guano Co.*, 58 Fla. 348; 1 Thompson, Trials, §§ 228 and 230.

In § 230, *supra*, Mr. Thompson says:

"Thus, in actions for *libel* or *slander*, where the defendant admits the writing or speaking and pleads justification, or claims privilege and denies malice,· the right, according to the modern doctrine, is with the plaintiff.  The reason is that the question of malice and of the extent of the damages are both in issue, and that the plaintiff has therefore something to prove in order to make out his case."

The question whether the burden of proof rests with a plaintiff or defendant may be determined by ascertaining which party, without evidence, will be compelled to submit

to an adverse judgment on the pleadings. Applying this test, we conclude, in view of the denials of the answer, the respondents could not recover. Ordinarily the burden of proof rests upon a plaintiff, and when material allegations of his complaint are denied by the answer, the burden will not be shifted unless subsequent affirmative allegations are pleaded in the answer so inconsistent with its denials as to amount to an admission of all the material allegations of the complaint. No such inconsistency appears in the answer before us. The respondents. having the burden were entitled to open and close the case.

Some exception is taken to instructions given and refused, but we find no error in this regard. It appears from the evidence that respondents did not request appellant to publish any statement, explanation or retraction. Appellant pleaded that it had been at all times ready and willing to publish any fair, reasonable, and truthful article or correction which the respondents or either of them might desire. Appellant now contends the trial judge erred in refusing the following requested instruction:

"You are instructed that it was the duty and obligation of the plaintiffs, and each of them, to reduce their damages, if any they suffered. The law requires every person to reduce any damages they may sustain by doing whatever they reasonably can in order to reduce such damages, and if the plaintiffs could, by request, have reduced their damages by the publication of any article or articles in the Chronicle which they might themselves desire or request to have published if the defendant would have published the same, then you will take into consideration that duty of plaintiffs and reduce their damages, if any they have suffered, to the extent that they might have reduced the same by the publication of any such article or articles, if you find that the defendant was ready and willing to publish any such article or articles, if the plaintiffs had requested the same."

No judicial decision, rule of law, or existing statute has been cited which imposes upon the plaintiff in an action for libel the duty of requesting any further publication from the

defendant.   Moreover, there is not in the record any evidence that the appellant informed respondents the columns of its paper were open to them.   When a newspaper has libeled a person, the duty is imposed upon it to make a full and complete retraction.   If it does so, it may plead and show such retraction in mitigation of damages, as appellant has done in this action.   An offer to the person libeled to publish any reasonable or truthful statement he may desire will not of itself constitute a correction of the wrong, nor will it deprive the libeled party of his right to recover damages if he does not avail himself of the offer.

Appellant's last contention is that the damages are excessive.   In support of this point, many cases are cited, most of them actions for damages arising from personal injuries. This is an action for libel.   The evidence shows Elizabeth L. Coffman to have been a young woman of excellent family, the daughter of a business man of prominence and wide acquaintance in the state of Idaho; that she was well educated; that she was of a retiring, quiet, and modest disposition; and the Spokane Chronicle was a newspaper of wide circulation in the city of Spokane, and throughout the states of Washington and Idaho.   There is no exact measure of damages to be awarded in an action for libel.   It is within the especial province of the jury to determine and fix the award.   The jury saw the respondent Elizabeth L. Coffman and heard her evidence and that of her friends, as to the effect of the publication upon her.   The trial judge, who also saw her and heard the evidence of all the witnesses, has sustained the verdict. We are now unable to conclude the damages are so excessive as to require a reduction.

The appellant has been awarded a fair trial, free from prejudicial error.   The judgment is affirmed.

DUNBAR, C. J., MORRIS, and CHADWICK, JJ., concur.

ELLIS, J., took no part.