[No. 18654. *En Banc.* April 2, 1925.]

## T. L. TENNANT, *Respondent,* v. F. C. WHITNEY & SONS, *Appellants.*[1]

PARTNERSHIP (16)—RELATION—EVIDENCE—SUFFICIENCY. In an action in tort, a partnership between defendant W. and his sons, as publishers of a newspaper, is not sufficiently established to warrant the submission thereof to the jury, where the only proof was the printed heading, "Published by W. & Sons," and evidence that one of the sons had joined in the execution of a chattel mortgage on the plant, and W. testified that none of the sons were interested as proprietors, that he used the firm name to encourage them, and that the son joining in the chattel mortgage did so at the request of the mortgagee, he having unpaid wages due him from his father.

LIBEL AND SLANDER (29)—PLEADING—ANSWER—TRUTH OF STATEMENTS—RATIFICATION. In libel, a defendant not guilty of the publication does not adopt and ratify it by pleading the truth of the statement and attempting to justify it.

SAME (3)—WORDS LIBELOUS PER SE—CHARGING CRIME. It is libelous *per se* to publish, concerning plaintiff's prosecution for the unlawful possession of "booze," that it matters not plaintiff was undoubtedly guilty, and that, by a technicality, he escaped the punishment he deserved, although the offense was not stated literally in the language of Rem. Comp. Stat., § 7338, defining the crime.

SAME (10, 29)—PRIVILEGE — JUDICIAL PROCEEDINGS — PLEADING JUSTIFICATION—DAMAGES. An allegation of justification in libel is privileged, under Rem. Comp. Stat., § 293, providing that the defendant may allege the truth of the matter and prove mitigating circumstances whether he proved the justification or not; and it is error to charge that a plea of justification is a repetition of the libel and may be considered in aggravation of the damages.

[1]Reported in 234 Pac. 666.

SAME (31, 40)—EVIDENCE—JUSTIFICATION OF CHARGE — PRESUMPTIONS—INSTRUCTIONS. In a civil action for libel in charging the plaintiff with the offense of unlawful possession of liquor, the defendant, pleading justification by the truth of the matter, is not entitled to an instruction giving him the benefit of the presumption, provided by Rem. Comp. Stat., § 7329, in criminal cases, that the possession of intoxicating liquor was for unlawful purposes, and made a *prima facie* case.

INTOXICATING LIQUORS (27)—PROHIBITION—LIQUORS PROHIBITED. The phrase, "capable of being used as a beverage," in the prohibition law is properly defined as a liquid that is reasonably capable of being drunk either for the pleasure of drinking or for its after effect.

LIBEL AND SLANDER (30, 32)—EVIDENCE—JUSTIFICATION—REPUTATION OF PLAINTIFF—ISSUES AND PROOF. In libel for imputing a crime to plaintiff, defendants' denial of the allegation that plaintiff previously bore a good reputation as a law abiding citizen puts the matter in issue and permits the plaintiff to give evidence of his general good reputation.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered June 25, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for libel. Reversed.

*Grady & Velikanje* (*D. V. Morthland,* of counsel), for appellants.

*Holden, Shumate & Cheney,* for respondent.

ASKREN, J.—The plaintiff, Tennant, a resident of Yakima, seeks recovery of damages from the defendants, F. C. Whitney and his sons, Frank and Albert Whitney, claimed to have been suffered by him as the result of a false and libelous editorial article published of and concerning him in the Yakima Independent, a weekly newspaper, as he alleges, published jointly by the defendants in Yakima. A trial upon the merits in the superior court for Yakima county, sitting with a jury, resulted in a verdict awarding to the plaintiff recovery in the sum of $2,500 against all of the defend-

ants, upon which a judgment was rendered accordingly, from which they have appealed to this court.

The article in question reads as follows:

### "Editorial
### "King Again in the Limelight

"Once more Justice C. Roy King appears in the limelight, blocking the prohibition officers in their efforts to enforce the law. The case has already been widely reported, but some may not yet know the facts in the case and wonder what it is all about. The following explanation may suffice.

"Dep. Sheriff Albert Banko went to Justice C. Roy King, stating his belief that *Manager T. L. Tennant, of the California Packing Plant, had in possession there for unlawful purposes a quantity of booze,* and asked for a search warrant. The warrant was issued, the booze was found. Tennant was arrested and the case was brought by Prosecuting Attorney Livesey in the court of Justice King for trial. Mr. Tennant employed for his defense Ex-Judge George B. Holden, who challenged the right of Deputy Banko to swear out the warrant, inasmuch as he had not sufficient information upon which to form a 'belief' in the case.

"The case was argued at some length, bringing out the fact that Mr. Banko's 'belief' was based upon the direct statement of a man in whose word he had confidence. Mr. Holden held this was not sufficient, Mr. King assented to his conclusion, denied the right of Banko to the warrant, which he himself had issued, and the case was dismissed.

"*It matters not* that the report to Mr. Banko was correct, that the booze was actually found in the California Packing Plant as was asserted, *that Tennant was undoubtedly guilty,* and that the prosecution had there in court the captured booze to present as evidence. All of this counted for nothing. *The defendant's attorney interposed with a technicality; to sustain that claim meant the dismissal of the case and the escape of Mr. Tennant from the punishment he deserved*—And Justice King assented and Tennant went free!

"Let the reader keep in mind that the 'belief' of Mr. Banko was completely justified by the facts, that these facts were at hand to convince anyone who would stop to consider, that the assertion of one reliable witness has been accepted hundreds of times as basis for swearing out warrants and that without question, and that this same objection was raised Wednesday in Judge Gilbert's court and was overruled.

"It would be interesting to hear Justice C. Roy King explain his own processes of reasoning in rendering such an amazing decision, and who would like to hear his side of the matter.

"The columns of the Independent are at his service for such explanation. Will Justice King explain?"

We have italicized the words of the article calling for particular notice, especially as touching the question of the article being libelous *per se*. Respondent Tennant, in his complaint following his allegation of the publication of the article in the paper, alleges by way of innuendo that it means:

"That the plaintiff, T. L. Tennant, was guilty of the crime of having in his possession in the business place of the said California Packing Corporation, a quantity of *intoxicating liquor for unlawful sale or disposition* and that he, the plaintiff, deserved punishment for the commission of said public offense;"

and further alleges that it is not true that he had in his possession for unlawful sale or disposition any intoxicating liquor whatever; that, at the time of the publication of the article, he bore a good reputation in the community as a moral and law-abiding man, and was highly respected by his acquaintances and business associates; that, by reason of the publication of the article, he was injured in his good name, was exposed to public ridicule, scorn and contempt and deprived of public confidence, suffering great mental anguish, chagrin, humiliation, shame and disgrace, to his damage in the sum of $5,000; and that appellants were at

the time jointly the publishers of the paper and the article.

Appellants, joining in their answer, admit the publication of the Yakima Independent and the article therein by the defendant F. C. Whitney, deny the publication of the paper or the article or the joining therein by appellants Frank and Albert, deny the allegation of the good reputation of the plaintiff; and as an affirmative defense allege the truth of the statements made in the article, and particularly with reference to the statements therein made of and concerning the plaintiff.

By appropriate and timely motions made in behalf of appellants Frank and Albert Whitney, the evidence was challenged as being insufficient to support any recovery as against either of them, the trial court requested to so decide as a matter of law and render judgment in their favor accordingly; this upon the theory that there was no sufficient proof of either of them being joint publishers with their father of the paper or the article, either as partners or otherwise. There is no evidence to show actual participation of either of the sons in the writing or publishing of the article. The only evidence touching the proprietorship or publication control of the paper is a statement in usual form at the head of one of the inside pages of the paper that the paper is "Published every Friday by F. C. Whitney & Sons," that the city directory gave the names of the proprietors of the paper as F. C. Whitney, Albert J. Whitney and Frank F. Whitney; that the two sons worked on the paper and that one of the sons, Albert J. Whitney, executed jointly with the father a chattel mortgage on the property to the Yakima Valley Bank. However, to overcome this seeming evidence of partnership, the father, while on the stand as respondent's witness, testified that neither

of the boys at any time were publishers or owners of the paper; that neither of them had any financial interest in the business; that, when two of his four sons finished school and came to work for him along with the other two sons who were working part of the time, he thought he would encourage them by using the firm name Whitney & Sons, and so adopted it; the words "sons" meaning all four of his sons; that the son Albert J. had not received all his wages, and when he desired to borrow money on a chattel mortgage at the bank he related these facts to the bank's officers, who preferred to have Albert join in the execution of the mortgage.

This was insufficient to hold the two sons as proprietors or publishers of the paper. There was no testimony to show that either of them had anything to do with or knew of the publication of their names as publishers in the city directory. *First National Bank v. Loggie,* 14 Wash. 699, 45 Pac. 644. The statement in the paper as to the publishers cannot be construed more strongly against the sons than a declaration of F. C. Whitney, not under oath, to such effect. *Akers v. Lord,* 67 Wash. 179, 121 Pac. 51; *Nilsson v. McDole,* 73 Wash. 312, 131 Pac. 1141.

It should be borne in mind that this is not a case of credit extended upon the faith of such statements in the paper regarding the owner where the sons might have misled a party to the action, but a case of tort where there arises the question of actual ownership.

The signing of the mortgage at the request of the bank by Albert because he had wages coming to him was nothing more than a release of any claim he might have in the property in question, and was of no more effect than a quitclaim deed signed at the request of third persons who deem it necessary for their protection. Upon this state of the evidence the court should

have held, as a matter of law, that the sons had no interest in the business, and dismissed them from the case.

It seems to be argued that the pleading of the truth of the article by appellants Frank and Albert is a ratification and adoption of the article as their own, and that therefore they should now be held as publishers thereof. This seems to be effectually answered by the decision of the United States circuit court of appeals in *Folwell v. Miller,* 145 Fed. 495, 10 L. R. A. (N. S.) 332, where it is said:

"It is urged for the plaintiff in error that some of the averments of the answer, setting up as a partial defense the truth of certain statements in the libel, amounts to a ratification by the defendant of the act of his assistant editor, and render the defendant liable as though he had originally directed the publication. It is a sufficient answer to this contention to say that, unless there was a cause of action against the defendant at the time the action was commenced, none which would maintain it could be created by his subsequent conduct."

We now proceed to the consideration of the claims of error which it is insisted entitle the appellant F. C. Whitney to a new trial. It is first contended in that behalf that the trial court erred in deciding, as a matter of law, that the article is libelous *per se.* Counsel presented this question and the court so ruled thereon near the beginning of the trial, holding that the article imputed to the respondent the crime of having in his possession intoxicating liquor for the purposes of unlawful sale or disposition. So the trial proceeded without proof being made in support of the innuendo allegation as to the meaning of the article in so far as it referred to respondent. Recurring to the language of the article, particularly to the words italicized by us in the above quotation thereof, it seems to us that its

language would be readily understood by anyone reading it as clearly imputing to respondent the commission of the crime defined by § 7309, Rem. Comp. Stat. [P. C. § 3166], as follows:

"It shall be unlawful for any person . . . to keep any intoxicating liquor, with intent to sell, barter, exchange, give away, furnish or otherwise dispose of the same, except as in this act provided: . . . "

We are not here concerned with the exceptions. This offense is punishable by a fine and imprisonment, and is a greater offense than bare possession. Section 7338, Rem. Comp. Stat. [P. C. § 3193]. It is true that the language of the article is not literally the language of the statute defining the offense; nor, it may be conceded, is the language of the article such as would be technically sufficient in making a charge of crime in an indictment or information. But such technical exactness is not necessary to the making of a published article imputing crime libelous *per se*. The law in this respect is well stated in the text of 36 C. J. 1161, as follows:

"In order to be actionable as charging a crime it is not necessary that the words should impute the offense with the technical accuracy required in an indictment or that they should make the charge in express terms. Where the offense charged is statutory, the words are actionable, although they do not charge the offenses in the very language of the statute, if the words are such that, construed according to their plain and natural import, they convey to those who hear that plaintiff had committed the offense. If the defamatory words, taken in their natural and ordinary signification, fairly import a criminal charge, it is sufficient."

The word "booze," as used in the article, plainly means, in common present day parlance, intoxicating liquor, and the words "possession there for unlawful purposes" plainly mean possession with intent, or for

the purpose which the statute condemns. Our own decisions strongly support our present conclusion that the article plainly imputes to the plaintiff the commission of crime as ruled by the trial court, and is therefore libelous *per se*. *Byrne v. Funk*, 38 Wash. 506, 80 Pac. 772, 3 Ann. Cas. 647; *Quinn v. Review Pub. Co.*, 55 Wash. 69, 104 Pac. 181, 133 Am. St. 1016, 19 Ann. Cas. 1077; *Wells v. Times Printing Co.*, 77 Wash. 171, 137 Pac. 457; *Wilson v. Sun Pub. Co.*, 85 Wash. 503, 148 Pac. 774, Ann Cas. 1917B 442; *McKillip v. Grays Harbor Pub. Co.*, 100 Wash. 657, 171 Pac. 1026. Such being the meaning of the article, the innuendo allegation in the complaint as to its meaning becomes of no consequence, and may be treated as surplusage. Respondent was therefore not called upon to introduce proof of the meaning of the article.

The trial judge gave to the jury an instruction as follows:

"Where a newspaper has libeled a person, the duty is imposed upon it to make a full and complete retraction. If it does not do so, but rather seeks to justify the publication by pleading the truth of the libel, such plea constitutes a repetition of the libel, which may be considered by the jury in aggravation of damages."

A plea of the truth of the charge is expressly provided for by our code, Rem. Comp. Stat., § 293 [P. C. § 8378], as follows:

" . . . the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and whether he prove the justification or not; he may give in evidence the mitigating circumstances."

The pleading, therefore, being authorized by statute, stands upon the same footing as any other plea filed in a court of competent jurisdiction and is privileged. We have held in a number of cases that, in a judicial

hearing, any pleading filed or statement made that is pertinent and relevant to the matter in issue is privileged. *Abbott v. National Bank of Commerce,* 20 Wash. 552, 56 Pac. 376; *Miller v. Gust,* 71 Wash. 139, 127 Pac. 845; *Houghton v. Humphries,* 85 Wash. 50, 147 Pac. 641, L. R. A. 1915E 1051; *Viss v. Calligan,* 91 Wash. 673, 158 Pac. 1012, Ann. Cas. 1918A 819; 36 C. J. 1253 states the rule thus:

"Defamatory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the issues in the case, is absolutely privileged; and it is immaterial that the allegations are false and malicious, and are made under cover and pretense of a wrongful or groundless suit."

Some states relax this rule and hold that, if the plea is interposed in bad faith, recovery may be had for the repetition of the libel in pleading, since then it is presumed to be done maliciously. But we have followed the rule quoted above from Corpus Juris, and the reason therefor will be found in *Abbott v. National Bank of Commerce, supra,* wherein it is said:

"The doctrine of privileged communications rests upon public policy, 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer.' *Bartlett v. Christhilf,* 69 Md. 219 (14 Atl. 518). It can not be doubted that it is a privilege liable to be abused, and its abuse may lead to great hardships; but to give legal sanction to such suits as the present would, we think, give rise to far greater hardships."

The pleading being privileged communication under the law, there could be no recovery for this repetition, and the giving of the instruction was reversible error.

Counsel for appellant requested the trial court to give the following instruction to the jury:

"You are instructed that if any person other than a regularly ordained priest, clergyman or rabbi actually ministering to a religious congregation has in his possession intoxicating liquor other than alcohol, he is guilty of a criminal offense, and such possession and proof thereof is prima facie evidence that such liquor was so held and kept for the purpose of unlawful sale or disposition, and if you believe from the evidence that the plaintiff at the time referred to in the newspaper article set forth in the complaint had intoxicating liquor other than alcohol in his possession or under his control, for the purpose of either selling the same, or for the purpose of giving it away, or in any manner disposing of it, then you must find for the defendants."

The theory upon which appellant requested this instruction was that, inasmuch as the court told the jury that the burden was upon appellants to establish their plea of justification that respondent had possession of the intoxicating liquor for unlawful sale or disposition, in order to sustain their plea it should have given them the benefit of the rule of evidence provided by statute, § 7329, Rem. Comp. Stat. [P. C. § 3185].

"In any prosecution for the violation of any provision of this act, it shall be competent to prove that any person, other than a regularly ordained clergyman, priest or rabbi actually engaged in ministering to a religious congregation, had in his possession any intoxicating liquor other than alcohol, and such possession and proof thereof shall be prima facie evidence that said liquor was so held and kept for the purposes of unlawful sale or disposition."

It will be seen that this statute, under its terms, is applicable to the trial of criminal cases. The very words at the beginning of the statute, "In any prosecution for the violation of any provisions of this act," signifies such an intention. The purpose of the act is apparent. In the trial of a criminal case all twelve of

the jurors must concur in the verdict. The state must prove the defendant guilty beyond a reasonable doubt. The jury are instructed that the defendant is presumed to be innocent, and since in the trial of a liquor violation it is always difficult for the state to show with what intent the liquor was held, the statute provides that, when the state has shown that the defendant had the intoxicating liquor in his possession, then the intent is presumed under the facts and a *prima facie* case has been made.

Appellants argue that they should be entitled to this same presumption, and that, when they have shown the possession by respondent, then it should be presumed that it was held for an unlawful purpose. It should be borne in mind that, while the charge contained in the libel was that the respondent was guilty of a crime, yet this case partakes of none of the features of a criminal action. In early days it was sometimes held that, in a libel action, one who pled the truth of the libel which charged another with a crime was required to prove that fact beyond a reasonable doubt, the same as in a criminal action. But now the weight of all modern authority is that it must merely be proven by a preponderance of the evidence, and indeed the jury were so instructed in this case. It may be admitted that, if the appellant were required to prove the truth beyond a reasonable doubt, then it might with reason be said that this instruction should be given. Appellant seeks to place itself in the same position as the state would occupy in a criminal action, and be given the benefit of the presumptions which are indulged on behalf of the state in an action where the respondent would have the benefit of instructions on the presumption of innocence; as to evidence beyond a reasonable doubt; the concurrence of all of the jurors, and other presumptions which naturally follow in that

class of cases. If the respondent in the trial of his libel case is to be shorn of all these presumptions which are naturally in his favor in a criminal action, with what degree of fairness can it be urged that the appellants should not be treated likewise? Or, in other words, having denied the respondent the presumption of innocence, with what reason can it be urged that the court should give this instruction which presumes his guilt? The instruction was properly refused.

The trial court gave to the jury an instruction as follows:

"The phrase 'capable of being used as a beverage' means a liquid that is reasonably capable of being drunk, either for the pleasure of drinking or its after effect, and does not apply to a liquid that it is possible to swallow, but is not reasonably fit or palatable."

This instruction evidently was given because certain of the liquor testified to as having been found in possession of respondent was such that there was room for difference of opinion as to whether or not it was intoxicating liquor capable of being used as a beverage; it being assumed by the court and counsel on both sides that, by reason of other language in our prohibition statute than that above quoted, intoxicating liquor, as those words are used in the statute, meant only intoxicating liquor capable of being used as a beverage. It is contended that this is not a correct interpretation of the words "capable of being used as a beverage." No decisions have been called to our attention which are of material aid in the deciding of this question, though the decisions in *State v. Hemrich*, 93 Wash. 439, 161 Pac. 79, L. R. A. 1717B 962, and *Gue v. City of Eugene*, 53 Ore. 282, 100 Pac. 254, are of some interest touching the question. One of the definitions of "beverage" found in the Standard Dictionary is: "Drink; that which is drunk; especially pleasant or

refreshing drink, or a habitual one." We are content to hold that this instruction is a fair interpretation of the words "capable of being used as a beverage."

There was introduced testimony in behalf of respondent to prove his general good reputation as a law-abiding citizen. We think the record fairly, though not especially, shows that this was over the objection of counsel for appellant, and that proper exceptions were taken thereto. They here claim that this was erroneous to the prejudice of appellant because not a proper issue in the case. We have seen that respondent alleged in his complaint that, at the time of the publication of the article, he bore a good reputation in the community in which he resided as a moral and law-abiding citizen; and that appellant denied this allegation. This manifestly put respondent's reputation in issue, if it could be put in issue at all in such a case. Now did not respondent have the right to introduce evidence of his good reputation for the purpose of proving an enhanced measure of damages, and also negative the criminal charge imputed to him by the published article, in view of the direct issue made thereon by the complaint and answer and the alleged truth of the imputation of crime as a defense? Counsel for appellant cite and rely upon the decision of this court in *Hall v. Elgin Dairy Co.*, 15 Wash. 542, 46 Pac. 1049. In that case there was drawn in question libelous language appearing in a circular issued by the dairy company wherein, referring to the plaintiff, it was stated: "We discharged him only upon his own confession of having wrongfully converted to his own use considerable sums of money collected for, and belonging to us." It does not appear that there were any allegations or denials in any of the pleadings in that case in terms putting in issue the general reputation of the plaintiff. Holding that the evidence of good reputa-

tion allowed to be proven in that case was erroneously admitted, Judge Scott, speaking for the court, said:

"It is first contended that the court erred in allowing the plaintiff to prove his good reputation. The respondent contends that this evidence was admissible in consequence of the defendants' having given in evidence to sustain their plea of justification specific instances of misconduct on the part of the respondent. Many cases have been cited by counsel upon either side, but, without undertaking to review them, it seems to us the better rule is that such testimony is inadmissible and that instances of specific misconduct do not authorize the plaintiff to prove his general good reputation."

This is all that appears in that decision touching the question of the admissibility of that evidence. A new trial was awarded because of that and other errors. The decisions of the courts of this country upon this subject are in serious conflict. We believe, however, that when a person of whom libelous language has been published, imputing to him the commission of a crime, pleads his good reputation in a civil action seeking damages because of the publication, and the publisher pleads in defense the truth of the publication and at the same time denies the allegation of good reputation of the plaintiff, there is then made such an issue as renders evidence of general good reputation of the plaintiff admissible. This subject has been reviewed and a conclusion reached in harmony with this view by the supreme court of Ohio in the recent decision of. *Sloneker v. Van Ausdall,* 106 Ohio St. 320, 140 N. E. 121, 28 A. L. R. 759, an extensive note being appended to that decision in the latter cited volume. We believe this is in accord with the decided weight of modern authority, in any event as applicable to the issues as made by the pleadings in the case now before us.

The weight of the decisions also seems to be to the effect that, where the libelous words impute a crime

to the one spoken of and the truth of such words are pleaded as a defense, the plaintiff seeking damages therefor may, even without issue otherwise made by the pleadings, introduce evidence of his good reputation, as he could were he upon trial under indictment or information in a criminal prosecution, because the question of his guilt of the imputed crime then becomes the real question. This may not seem wholly in harmony with the general observations made in *Hall v. Elgin Dairy Co.,* above quoted, but it is a phase of the question evidently not there considered, nor is it necessary for us to so decide here, because the issue is in terms made by the pleadings. We conclude that the trial court did not err in allowing this evidence to be placed before the jury; nor do we think that this holding is out of harmony with the very general observations above quoted made by Judge Scott in *Hall v. Elgin Dairy Co.,* in view of the absence of any showing in that case, as reported, of there being any issue voluntarily made between the parties by pleadings or evidence upon the question of the plaintiff's good reputation.

Some other claims of error are made, but we think it sufficient to say that we have carefully considered them and regard them as without substantial merit. In any event, what we have already said sufficiently disposes of most of them.

The judgment as against appellants Frank and Albert Whitney is reversed and the trial court is directed to enter a final judgment denying to respondent any recovery as against either of them. The judgment is reversed as to appellant F. C. Whitney and the cause remanded to the superior court with directions to award him a new trial.

TOLMAN, C. J., HOLCOMB, FULLERTON, MACKINTOSH, BRIDGES, MAIN, and MITCHELL, JJ., concur.