[No. 39191. Department Two. May 9, 1968.]

ROBERT GETCHELL et al., *Respondents,* v. AUTO BAR
SYSTEMS NORTHWEST, INC., et al., *Appellants.**

*John L. LaLonde* and *Theodore S. Bloom,* for appellants.
*Robert E. Anderson,* for respondents.

*Reported in 440 P.2d 843.

HAMILTON, J.—This is an action in slander. Plaintiffs, seeking damages, alleged defendants wrongfully made statements imputing that plaintiff Robert Getchell was guilty of criminal conduct and the inability to meet business commitments. As a defense, defendants asserted truth and absolute or qualified privilege. Following trial and the overruling of defendants' motions for dismissal or directed verdict, the cause was submitted to the jury which returned a verdict awarding plaintiffs $15,000 general damages. In denying defendants' post trial motions for judgment notwithstanding the verdict or in the alternative for new trial, the trial judge reduced the verdict to $10,000. Plaintiffs consented to the reduction and judgment was so entered. Defendants appeal.

Defendants set forth eight assignments of error. By their nature and the course of defendants' argument, the claims of error fall into three categories: (1) A challenge to the sufficiency of the evidence to warrant submission of the cause to the jury or to sustain its verdict; (2) asserted error in the admission and rejection of evidence; and (3) claimed error in failing to give two proposed instructions. We will discuss defendants' contentions in the order listed.

Briefly, and by way of background, the defendant Auto Bar Systems Northwest, Inc., is an Oregon corporation owned and managed by the defendants George Shoop, Mel Rolfson, and Lester Peake, president, vice-president, and secretary-treasurer, respectively. The principal business of the enterprise is the marketing, installation, and servicing of a particular brand of an automatic liquor dispensing device for use in cocktail bars. For this purpose, the corporation holds what the defendants designate as an exclusive franchise to distribute the device in certain northwestern states, including the state of Washington.

In late 1962 or early 1963, plaintiff Robert Getchell was engaged by defendants as a sales and service man in the Washington area. Plaintiffs contended the compensation arrangement provided for regular weekly draws of $125 to be charged against prospective commissions to be computed at

15 per cent of gross sales throughout Washington. Defendants, on the other hand, contended that the arrangement contemplated only a commission of 15 per cent upon actual sales made by plaintiff Robert Getchell with weekly draws permissible against earnings. Mr. Getchell provided service calls and made several sales during the early part of 1963. He claimed commissions due upon at least a $27,000 gross. Defendants disputed the amount of commissions claimed.

Mr. Getchell testified that the weekly payments due from defendants were irregular thereby causing him financial difficulties. This resulted, he contended, in frequent requests for payments, some lump sum payments, and finally a mid-July, 1963, conference with Mr. Shoop. Mr. Getchell asserted that this conference gave rise to an agreement authorizing him to retain for his use as needed, and in lieu of unpaid weekly draws, down payments from customers to whom he sold equipment, provided he accounted to defendants for any such funds retained. Thereafter, between August 2 and September 13, 1963, Mr. Getchell retained one down payment and two contract payments made by customers, totaling $1,073.40. According to Mr. Getchell, he accounted to defendants for these sums in September, 1963, following which defendants made additional, although irregular, advances and the employment relationship continued amicably until he voluntarily terminated it in early 1964.

Defendants, in substance, denied their advances against commissions were unsystematic, asserted that total advances exceeded earned commissions, that any retention of customer payments was unauthorized and wrongful, and that Mr. Getchell had not advised them of any such retained payments before November, 1963.

Following termination of the employment arrangement in early 1964, Mr. Getchell continued to make service calls upon at least one of defendants' customers and made arrangements whereby he undertook to sell reconditioned liquor dispensing units of the brand franchised to defendants. In the course of his activities in this latter respect, Mr. Getchell

sold a reconditioned unit to the Wenatchee, Washington, Elks Club, and entered into negotiations for the sale of a unit to the Spokane, Washington, Elks Club. Upon becoming aware of Mr. Getchell's efforts, defendants contacted various officers of the two Elks Clubs and the customer to whom Mr. Getchell was furnishing unit service. In substance, according to witnesses representing the organizations contacted, defendants advised them that Mr. Getchell was no longer an employee of defendants, that he had wrongfully retained company funds, and that he would be unable, due to defendants' franchise, to provide parts and service for the reconditioned units he was offering for sale. In addition, two of the witnesses stated that Mr. Shoop and Mr. Rolfson told them that the defendants were out to "get" Mr. Getchell, and a third witness stated he was told that defendants could file charges against Mr. Getchell for misappropriation of funds. Defendants denied making the statements attributed to them, except the substance of the statement relative to Mr. Getchell's inability to obtain parts and furnish adequate service, which they contended was true by virtue of their franchise. They further indicated that in their view Mr. Getchell had actually, wrongfully, and without authorization retained company funds, hence had they made any such statements the same would likewise have been true.

As an upshot of defendants' calls upon the respective Elks Clubs, the officers thereof conducted an investigation, following which the Wenatchee Elks Club retained the equipment purchased from Mr. Getchell, and the Spokane Elks Club purchased the units offered by Mr. Getchell. The evidence indicated that Mr. Getchell had an arrangement with a California distributor which permitted him to obtain replacement parts as well as to provide a service warranty upon the reconditioned equipment.

At or about the time of the foregoing events, defendant Peake, on behalf of the other defendants, came to Spokane, the home of plaintiffs, and telephoned Mr. Getchell. According to Mr. Getchell, Mr. Peake requested that he re-

frain from selling the reconditioned equipment and return as a salesman for defendants. To this, Mr. Getchell stated, he told Mr. Peake he would think it over and answer by mail. According to Mr. Peake, the conversation revolved about his request that Mr. Getchell return the funds he owed defendants and Mr. Getchell's response that he would explain his financial situation by letter. Both testified the conversation, whatever its content, was amicable.

The day following the telephone conversation, Mr. Peake contacted a deputy prosecuting attorney for Spokane County, presented him with the cancelled checks representing the customer payments Mr. Getchell had retained, and discussed the criminal aspects with him. This was done pursuant to a conversation between the individual defendants as to whether criminal charges should and could be brought. The deputy prosecuting attorney referred the matter to the Spokane City Police Department for investigation. The detective in charge of the investigation testified that Mr. Peake came to his office and talked with him. Mr. Peake denied any contact with the police officer. The officer called Mr. Getchell and asked that he report into the police station. This Mr. Getchell did, and thereafter no further official action was taken.

Plaintiffs claimed that as a result of the actions of defendants, they suffered embarrassment, loss of reputation, and mental anguish. They voluntarily dismissed during trial, any claim of special damages, i.e., loss of earnings.

Against the backdrop of the testimony as outlined, the trial court submitted the issues of slander, truth, qualified privilege, malice and general damages to the jury.

In support of their assignments of error challenging the sufficiency of the evidence, defendants first argue that the evidence indisputably establishes the truth of the alleged slanderous statements. We cannot agree. The testimony is in outright conflict as to (a) whether some of the purported statements were made, (b) whether Mr. Getchell had authority to withhold or retain customer payments, (c) whether Mr. Getchell properly, timely, and in keeping with

his authority reported the payments he withheld, and (d) whether Mr. Getchell could obtain replacement parts for and furnish service upon the reconditioned devices he sold. A jury question was clearly presented and properly submitted. Had the trial court followed any other course it would have been in error.

Defendants next argue (1) that the statements made or presented to the deputy prosecuting attorney were absolutely privileged, and (2) if such statements or the data supplied to the deputy prosecuting attorney were only conditionally privileged, then there was no evidence upon which a finding of actual malice could be based. Again we must disagree with defendants.

In *Jolly v. Fossum,* 63 Wn.2d 537, 542, 388 P.2d 139 (1964), we stated:

> While there is authority indicating that public policy requires that statements made *to* a prosecuting attorney are absolutely privileged, the majority of the cases hold that the privilege is qualified or conditional, not absolute. The statements must be made "without malice, in good faith, and in an honest belief of their truth arrived at after a fair and impartial investigation or upon reasonable grounds for such belief." But the privilege cannot be abused. . . .
>
> . . . .
>
> The rule is succinctly stated in 3 Restatement, Torts § 598.
>
> "An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that
>
> "(a) facts exist which affect a sufficiently important public interest, and
>
> "(b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true."
>
> Decisions in this jurisdiction recognizing the defense of qualified privilege are cited in the quotation from *Owens, supra* [*Owens v. Scott Publishing Co.,* 46 Wn.2d 666, 284 P.2d 296 (1955)]. It is the universal rule that defamatory statements lose their conditional privileged character upon proof of actual malice. (Footnotes omitted.)

The alleged defamatory statements were, under our holding in the *Jolly* case, conditionally or qualifiedly privileged. They were not absolutely privileged. And, the testimony and evidence submitted by plaintiffs, together with the reasonable inferences which can be drawn therefrom, tended to establish actual malice. Under these circumstances, plaintiffs were entitled to have the issue submitted to the jury. *Fahey v. Shafer*, 98 Wash. 517, 167 Pac. 1118 (1917).

The same conclusion applies to defendants' claim of qualified privilege predicated upon their assertion that they were protecting a legitimate business interest and enjoyed a community of interest with the officers of the respective Elks Clubs and the customer whom they contacted.

Finally, under this category of assignments of error, defendants argue that the verdict and the amount of the judgment is excessive. They say this is so because, in their view, the statements concerning Mr. Getchell's ability to furnish parts and service were not slanderous per se. Hence, they contend, such statements would not support a verdict for general or compensatory damages as distinguished from special damages, *i.e.*, loss of earnings.

■ We have held that defamatory words spoken of a person which, in themselves, prejudice him in his profession, trade, vocation, or office are slanderous and actionable per se, unless they are either true or privileged. *Miles v. Louis Wasmer, Inc.*, 172 Wash. 466, 20 P.2d 847 (1933); *Owens v. Scott Publishing Co.*, 46 Wn.2d 666, 284 P.2d 296 (1955). We have also pointed out that in determining whether words are capable of a defamatory meaning, they must be considered in the context in which they were uttered or published as well as in the light of the circumstances surrounding the publication. *Pitts v. Spokane Chronicle Co.*, 63 Wn.2d 763, 388 P.2d 976 (1964); *Purvis v. Bremer's Inc.*, 54 Wn.2d 743, 344 P.2d 705 (1959); *Ziebell v. Lumbermens Printing Co.*, 14 Wn.2d 261, 127 P.2d 677 (1942).

The trial court, in the instant case, determined that the statements concerning Mr. Getchell's ability to furnish

parts and service for the devices he was offering for sale were capable of a defamatory meaning under the circumstances attending their utterance. The trial court then, under proper instructions, submitted the issue of whether they were slanderous or actionable per se to the jury. This was permissible. *Purvis v. Bremer's Inc., supra.* The evidence of the circumstances surrounding the utterance of the statements is more than sufficient to sustain a jury finding that the statements were actionable per se. We will not disturb their verdict upon this score. *Haynes v. Spokane Chronicle Publishing Co.,* 11 Wash. 503, 39 Pac. 969 (1895).

Alternatively, defendants argue that the evidence of damage to plaintiffs' reputation and emotional equilibrium was so meager as to warrant only nominal damages. Ergo, defendants contend the amount of the verdict indicates passion and prejudice. We do not agree.

■ There is no exact measure of general damages which can be applied in either a libel or slander action. It is within the special province of the jury to determine the amount. *Coffman v. Spokane Chronicle Publishing Co.,* 65 Wash. 1, 117 Pac. 596 (1911); *Lamanna v. Scott Publishing Co.,* 48 Wn.2d 683, 296 P.2d 321 (1956); *Grein v. LaPoma,* 54 Wn.2d 844, 340 P.2d 766 (1959). And, where defamation is found to be actionable per se, and a pertinent defense is not established, substantial damages may be awarded without proof of actual damages. *Michielli v. U.S. Mortgage Co.,* 58 Wn.2d 221, 361 P.2d 758 (1961).

We are satisfied that the verdict, as reduced by the trial court, is within the range of the evidence adduced upon the matter of damages and is not the result of passion or prejudice.

Under the second category of assignments of error, the defendants first argue that the trial court erred in permitting plaintiffs to adduce testimony in their case in chief pointing to the good character of Mr. Getchell. We find no error in this respect.

■ Plaintiffs in their complaint alleged that their good reputation was damaged by defendants' alleged statements imputing criminal conduct. Defendants denied such allegations and alleged the truth of their statements. The issues thus framed bring the question of the admissibility of character evidence on the part of plaintiffs squarely within our holding in *Tennant v. F. C. Whitney & Sons,* 133 Wash. 581, 595, 234 Pac. 666 (1925), wherein we stated:

> We believe, however, that when a person of whom libelous language has been published, imputing to him the commission of a crime, pleads his good reputation in a civil action seeking damages because of the publication, and the publisher pleads in defense the truth of the publication and at the same time denies the allegation of good reputation of the plaintiff, there is then made such an issue as renders evidence of general good reputation of the plaintiff admissible. . . . We believe this is in accord with the decided weight of modern authority, in any event as applicable to the issues as made by the pleadings in the case now before us.

As pointed out in the *Tennant* decision, the case of *Hall v. Elgin Dairy Co.,* 15 Wash. 542, 46 Pac. 1049 (1896), relied upon by defendants, is clearly distinguishable.

■ Defendants next contend that the trial court erred in precluding them from introducing, for impeachment purposes, plaintiffs' 1964 income tax return. We find no merit in this contention. The issue of loss of earnings had been dismissed from the action and no substantial evidence bearing upon that aspect of damages was adduced. The only purpose defendants sought to put in the 1964 income tax return was to generally impeach Mr. Getchell on purely collateral matters. The trial court properly sustained plaintiffs' objection. *Pulley v. Pacific Coca-Cola Bottling Co.,* 68 Wn.2d 778, 415 P.2d 636 (1966); *O'Neil v. Crampton,* 18 Wn.2d 579, 140 P.2d 308 (1943).

Under the third category of assignments of error, defendants contend the trial court erred to their prejudice in refusing to give two proposed instructions. One of the proposed instructions dealt, in a rather argumentative way, with the constitutional right of free speech, and the other

instruction related to justification and excuse. We find, upon reviewing the instructions given by the trial court, that the substance of these proffered instructions was amply and clearly covered in instructions dealing with the defenses of truth and qualified privilege.

Finding no error, we affirm the judgment.

FINLEY, C. J., HILL, J., and OTT, J. Pro Tem., concur.

---

July 8, 1968. Petition for rehearing denied.