Dear Senator Mueller:
This is in response to your request for an official opinion of this office concerning the question of whether "`intoxicating liquor' used for sacramental purposes is subject to the regulatory provisions of Chapter 311, RSMo?"
Section 311.050, RSMo 1969, provides as follows:
 "It shall be unlawful for any person, firm, partnership or corporation to manufacture, sell or expose for sale in this state intoxicating liquor, as defined in section 311.020, in any quantity, without taking out a license."
The term "intoxicating liquor" as used in Chapter 311 is defined in Section 311.020, RSMo 1969. This statute provides:
 "The term `intoxicating liquor' as used in this chapter, shall mean and include alcohol for beverage purposes, alcoholic, spirituous, vinous, fermented, malt, or other liquors, or combination of liquors, a part of which is spirituous vinous, or fermented, and all preparations or mixtures for beverage purposes, containing in excess of three and two-tenths percent of alcohol by weight."
The term "person" as used in Chapter 311, is defined in Section311.030 as:
 ". . . any individual, association, joint stock company, syndicate, copartnership, corporation, receiver, trustee, conservator, or other officer appointed by any state or federal court."
Any person who sells intoxicating liquor in Missouri must also pay a tax on the liquor sold. Section 311.550, RSMo Supp. 1975, provides as follows:
 "In addition to all other licenses and charges, there shall be paid to and collected by the director of revenue charges as follows:
* * *
 "(2) For the privilege of selling wines, the sum of thirty cents per gallon."
In many instances, intoxicating liquors used for sacramental purposes are awarded a unique status exempt from the classification of other liquors. See People v. Marquis, 291 Ill. 121,125 N.E. 757, 8 A.L.R. 874 (1919); California Wine Ass'n. v. Doran,28 F.2d 81 (1928); Tennant v. F. C. whitney Sons, 133 Wn. 581,234 P. 666 (1925). In the absence of such express exemption, it is necessary to ascertain the legislative intent in the enactment of the legislation.
 "In construing statutes, the court must attempt to ascertain the intention of the Legislature and determine the object and purpose of that intention from the words used in the statute." In re Dugan's Estate, 309 S.W.2d 137 (Spr.Ct.App. 1957) Syllabus No. 7.
 "When called upon to construe a statute, court's first and foremost duty is to ascertain and give effect to legislative intent expressed in statute." Corder v. Corder, 546 S.W.2d 798 (Mo.Ct.App. at K.C. 1977) Syllabus No. 7.
An interpretation of the effect of prohibition statutes on sacramental wines was addressed in De Hasque v. Atchison, T. S.F. Ry. Co., 68 Okla. 183, 173 P. 73 (1918). In this case, there was no express exception for such wines in the relevant statutes. The court held that the prohibition of the sale and transportation of intoxicating liquors does not apply to wine which is to be used solely for sacramental purposes, even though such wine if drunk in sufficient quantities will produce intoxication. The court stated:
 "General terms of the statutes or the Constitution must be construed in the light of their common ordinary usage and meaning. While it appears the altar wine in question is intoxicating, if drunk in sufficient quantities, yet it can hardly be said, if seems to us, that the term `intoxicating liquors,' as commonly used in prohibition statutes, includes such wine when used in divine worship. The object and purpose of prohibition statutes is to prevent the intemperate use of intoxicating liquors with the attending and consequential evils. The use of wine in this sacred service forms no part of this evil." Id. at p. 75.
An examination of the Chapter 311 statutes quickly reveals that liquor containing over three and two-tenths percent alcohol which is to be used for beverage purposes is considered to be intoxicating liquor and therefore subject to the Liquor Control Laws of Missouri. The issue then becomes whether or not wines used for sacramental purposes are considered to be beverages as defined in Section 311.020.
The term beverage has been defined to include the following:
Webster's defines a beverage as:
 "1. Liquid for drinking: esp. such liquid other than water (as tea, milk, fruit juice, beer) usu. prepared (as by flavoring, heating, admixing) before being consumed. . ."
In F. W. Woolworth Co. v. State, 72 Okl.Cr. 125, 113 P.2d 399,401 (1941), the court stated:
 "After a consideration of all the authorities recited in the respective briefs of the parties hereto and others not cited in the briefs, it is our conclusion that the definition of the term `capable of being used as a beverage,' as contemplated by the Legislature in the passage of the act here involved, means a liquid that is reasonably capable of being drunk either for the pleasure of drinking or its after effect, and does not apply to a liquid that is possible to swallow, but not reasonably fit or palatable. Such question is not to be determined by the name given to a liquid, but by the facts in each particular case."
In Gue v. City of Eugene, 53 Or. 282, 100 P. 251, 256 (1909), the court stated:
 "`The use of liquor as a beverage,' . . . `does not mean simply that the same is to be drunk, but the word "beverage" is used to distinguish the act of drinking liquor for the mere pleasure of drinking from its use for medicinal purposes.' The phrase, `for beverage purposes,' as used in the complaint, signifies a sale of malt liquor to a person in order to gratify an appetite for intoxicants, or for the mental exaltation or for the physical effect which the imbibing of a stimulant immediately affords, as contradistinguished from a sale of such liquor for any of the objects authorized by the section of the ordinance under consideration. The complaint, in our opinion, sufficiently negatived any lawful sale of the liquor specified."
It is readily apparent that sacramental wines used in religious services are not being consumed for physical or mental exaltation but rather as an inherent part of a religious practice. The wine is being consumed for another purpose than the mere pleasure of drinking. Moreover, the minimal amount of wine which is consumed in these services could hardly be said to gratify an appetite for intoxicants.
Therefore, it is the opinion of this office that wines used in religious services are not being used "for beverage purposes" as provided in Section 311.020.
In support of this conclusion we note that the Division of Liquor Control has enforced this statute in this same manner since its passage. As stated in State v. Public Service Commission ofMissouri, 343 S.W.2d 177 (K.C.Ct.App. 1960):
 "Our courts consistently observe the principle that the construction placed upon a statute by a governmental agency charged with its execution and enforcement is entitled to great consideration and should not be disregarded or disturbed, unless clearly erroneous — particularly when that construction has been followed and acted upon for many years." p. 182.
CONCLUSION
Therefore, it is the opinion of this office that "sacramental wines" are not included in the definition of "intoxicating liquor" as used in Section 311.020, RSMo 1969, and that such wines are not subject to the licensing and regulatory provisions of Chapter 311, RsMo.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Cary Augustine.
Very truly yours,
 JOHN ASHCROFT Attorney General