[No. 27112. Department Two. September 1, 1938.]

WILLIAM A. REUSCH, *Appellant*, v. FORD MOTOR COMPANY, *Respondent*, J. R. SIMPSON, *Defendant*.[1]

*Vanderveer & Bassett* and *Clarence J. Coleman*, for appellant.

*Williams & Davis* and *Parker Williams*, for respondent.

BEALS, J.—During the month of December, 1936, plaintiff, William L. Reusch, purchased a Ford motor

[1]Reported in 82 P. (2d) 556.

truck from J. R. Simpson, of Everett, a dealer in automobiles and a local distributor representing defendant Ford Motor Company. March 26, 1937, plaintiff was driving the truck, carrying a load of lumber, along a dirt road near the town of Bothell. The truck became mired and stopped in such a position that it tilted to the right. During plaintiff's efforts to extricate the truck, it caught fire, and in his hurried attempt to reach a place of safety, plaintiff tripped over a log and fell, injuring his pelvis and spraining his back.

Plaintiff then instituted this action against the Ford Motor Company and J. R. Simpson, alleging that the truck was defective in construction and that, because of these structural defects, gasoline had leaked from certain appliances near the gasoline tank; and that, because of other defects in the construction of the muffler and exhaust pipe, sparks had escaped therefrom, igniting the gasoline, thereby damaging the truck and causing severe injuries to his person. The action was tried to the court, sitting with a jury, and at the close of plaintiff's case, defendants challenged the sufficiency of the evidence, with the result that the trial court dismissed the action as to both defendants. Plaintiff's motion for a new trial having been denied, judgment was entered dismissing the action, and plaintiff has appealed.

No error is assigned upon the dismissal of the action as to defendant J. R. Simpson. Error is assigned upon the dismissal of the action as against Ford Motor Company.

Appellant contends that the truck was defective and negligently constructed by respondent, in that the gasoline tank was placed under the driver's seat and equipped with an intake pipe located near the lower right-hand corner of the tank, about eight inches above the muffler and exhaust pipe; that both the intake and

an electric gauge connection with the tank, which was located directly under the driver's seat, were so negligently constructed and attached that gasoline leaked therefrom during the ordinary use of the truck; and that the muffler and exhaust pipe were so negligently placed and connected that sparks would escape therefrom and ignite the leaking gasoline.

Respondent answered appellant's amended complaint with denials, and affirmatively pleaded contributory negligence on the part of appellant. The trial court held that, as matter of law, it appeared from appellant's evidence that there was no such defect in the construction of the truck as to constitute negligence or render the operation of the truck dangerous, and also held that appellant was barred from recovery by reason of his contributory negligence.

Appellant relies upon the well established rule that, in passing upon a challenge to the sufficiency of a plaintiff's evidence in a case tried to a jury, the challenge should be denied if there is any evidence, or reasonable inference from the evidence, which could sustain a verdict in the plaintiff's favor.

The evidence concerning the construction of the truck shows that the gasoline tank was placed under the driver's seat; that the muffler was located below and near the right-hand side of the gasoline tank; that, approximately two inches back of the muffler, the muffler pipe slipped over the exhaust pipe, the connection being reinforced by a clamp. Appellant argues that the connecting pipes, not having been welded together, became separated, probably by vibration, thereby permitting the escape of sparks. He also contends that the intake pipe, or gooseneck, located above the muffler, was so negligently constructed as to leak, and that, particularly when the truck tilted, gasoline would run down onto the muffler and along the muffler

to the slip connection joining the muffler and the exhaust pipe; that, when the full force of the engine was exerted, flames would be forced through the muffler into the slip connection and the exhaust pipe; and that the fire above referred to was caused by the escape of a spark at the point of the slip connection; which ignited the gasoline. Appellant argues that, had the joint been welded, the danger of escaping sparks would have been avoided. It appears that during recent years, the clamp slip-joint method has been generally, if not universally, used in automobile construction.

Appellant testified that, several days after his purchase of the truck, and while using the same in his operations near Everett, the truck became badly mired down, and gasoline commenced to leak from the intake pipe at its point of connection with the gasoline tank. Upon returning to Everett that evening, appellant complained of the leak to the distributor of Ford cars, and the connection was tightened with a wrench. Shortly thereafter, appellant discovered that the gasoline gauge, which was fastened to the top of the gasoline tank, was leaking, and the truck was several times returned to the distributor, who endeavored to close the leak. Notwithstanding these efforts, gasoline continued to run from the gauge connection onto the floor of the cab. Appellant further testified that the floor of the cab was generally saturated with gasoline, but that the distributor shop foreman had told him that this was not dangerous, as long as appellant did not smoke. He further testified that he had been in the garage business some thirty years, had been a shop foreman, and had owned and operated approximately twenty automobiles, including six or seven trucks, and that he himself had frequently repaired his own cars.

Appellant stated that, on the day of the accident, he had several loads of lumber to move. He had com-

pleted one trip and was moving the second load, when he stopped to remove an obstruction on the road. When he stopped the truck, it stuck in a deep rut, and tilted strongly to the right. On the day of the accident, appellant had not noticed any leakage prior to this time. Because of the leaning position of the truck, a considerable quantity of gasoline leaked from the gooseneck, appellant's attention having been directed to the gasoline running out on the right-hand side of the truck under the running board. Appellant further testified that he worked approximately fifteen minutes in clearing the road, and then for almost half an hour endeavored to extricate his truck. In his attempt to move the truck, he naturally exerted its full power. After many vain attempts to move, appellant finally put the truck in tractor gear, and succeeded in pulling out of the mudhole. After he had proceeded about forty feet, he noticed a fire toward his right, in the neighborhood of the gooseneck. After an attempt to smother the flame with his jacket, he jumped from the cab and fell, receiving the injuries of which he complains. Notwithstanding these injuries, appellant, with the assistance of another man, succeeded in extinguishing the fire, which, however, caused considerable damage to the truck.

It appears from the evidence that the slip-clamp method of joining exhaust (or tail-pipe) and muffler pipe is commonly used. Such a joint, or, indeed, any joint, might be loosened by violent, continued vibration; as one witness stated, "vibration would work anything loose." We find no basis in the record which would support a finding that the slip-joint on appellant's truck ever became loose or that any spark or flame escaped therefrom. The evidence is to the effect that gasoline, coming in contact with a hot metal surface, will vaporize, but will not take fire. Several wit-

nesses testified that some Ford 1937 trucks, similar to that purchased by appellant, leaked both at the gooseneck and gasoline gauge joints, and appellant vigorously argues that the evidence shows that the construction of these trucks was so inherently negligent and defective as to render respondent liable in this action.

On this phase of the case, appellant relies upon 2 Restatement of the Law of Torts, 1084, § 398, where the rule is stated as follows:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

The doctrine laid down in the text is amplified by the following illustration:

"The A Stove Company makes a gas stove under a design which places the aperture through which it is lighted in dangerous proximity to the gas outlet. As a result of this B, a cook employed by C, who has bought one of these stoves from a dealer to whom A has sold it, while attempting to light the stove is hurt by an explosion of gas. The A Stove Company is liable to B."

While the truck which appellant purchased was intended for hard usage, it clearly appears that appellant from the beginning subjected it to considerable strain. The first time it mired down, it was necessary to dump the load and employ a tractor to pull the truck free. Respondent's local agent was apparently always ready to do his best to stop the leaks, and intended to use a new variety of gasket, which the factory was sending.

The evidence does not establish just what occasioned the fire. While it was stated that sometimes sparks would be blown clear through the tail pipe, it does

not appear that the fire was occasioned by a spark escaping through the slip-joint connection. While a considerable vibration, long continued, might cause such a joint to become loose, it cannot be definitely stated that such a condition caused the damage to appellant's truck. When appellant dismounted from the truck to remove the obstacle from the road, he noticed gas flowing from the gooseneck and escaping under the running board. After fifteen minutes work on the road, appellant remounted his truck and consumed approximately thirty minutes in an attempt to force the truck out of the rut in which it had settled.

Appellant argues that, from the evidence, it appears that the fire could have been started only by a spark or flame escaping through the slip-joint, and that the evidence excludes all other reasonable possibilities. The record does not support this contention. Some part of the mechanism of the truck caught fire, but the immediate occasion of the starting of the fire is mere matter of guess and speculation.

As to the liability of a manufacturer, the rule formerly was that no liability existed save to persons with whom the manufacturer was in privity of contract. Later, the strict rule was modified, and the maker held liable when the thing manufactured was dangerous in itself and was defective in some particular. The rule was again modified, and the manufacturer held liable to third persons, in cases where the article manufactured, while not inherently dangerous in itself, was dangerous if defectively or negligently constructed. This latter phase of the doctrine was discussed by this court in the case of *Foster v. Ford Motor Co.*, 139 Wash. 341, 246 Pac. 945, 48 A. L. R. 934.

An automobile is not inherently dangerous, unless negligently constructed. As stated in the case of *Dav-*

*lin v. Henry Ford & Son*, 20 F. (2d) 317, the duty of a manufacturer is

".  .  . to use reasonable care in employing designs, selecting materials, and making assemblies, in the construction of a tractor, which would fairly meet any emergency of use which could reasonably be anticipated."

In the case of *Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P. (2d) 409, 88 A. L. R. 521, this court, in holding the defendant liable in an action for breach of warranty, said:

"The rule in such cases does not rest upon contractual obligations, but rather on the principle that the original act of delivering an article is wrong, when, because of the lack of those qualities which the manufacturer represented it as having, the absence of which could not be readily detected by the consumer, the article is not safe for the purpose for which the consumer would ordinarily use it."

The supreme court of Illinois, in the case of *Rotche v. Buick Motor Co.*, 358 Ill. 507, 193 N. E. 529, said:

"The mere fact that an accident resulting in an injury to a person or in damage to property has occurred does not authorize a presumption or inference that the defendant was negligent. The burden was upon the defendant in error to prove by competent evidence, direct or circumstantial, that the plaintiff in error was guilty of negligence in the manufacture or assemblage of the automobile in question."

Appellant's truck had been subjected to considerable usage, and on at least eight occasions had been taken to the shop for repairs. While several witnesses testified that, on certain trucks similar to that purchased by appellant, gasoline had leaked from both the gauge and the intake pipe, this evidence would not support a judgment against respondent upon the ground that respondent had been negligent in the design or plan of the truck.

That an appliance, or several appliances of the same design, which employs in its operation gasoline, oil, or other fluid substance, occasionally leaks, does not prove that either the design, material, or construction is defective. The evidence shows that the clamped slip-joint was in general use, and it does not appear that this method of joining the pipe leading from the muffler and the exhaust, or tail-pipe, resulted in danger, or even any difficulty, in the operation of motor vehicles. There can be no doubt but that, at the time of the fire, the truck was subjected to very severe strain. There is no direct evidence as to where the spark which ignited the gasoline came from. A finding that the fire was occasioned by a spark from some defective portion of the machinery used in operating the truck, which condition resulted from the negligence of respondent, would be based merely upon speculation and conjecture.

Appellant relies upon several cases in which the manufacturer of an appliance was held liable to a purchaser because of some inherent defect in the particular article purchased.

In the case of *Goullon v. Ford Motor Co.*, 44 F. (2d) 310, the manufacturer of a tractor was held liable for injuries occasioned by a breaking of the rim of the steering wheel. The plaintiff appealed from a directed verdict against him. The appellate court held that the jury might have found that, if the steering wheel was so defective that it might break under the strain of ordinary use, the defendant might have been held liable for resulting damages. The court held that there was nothing which called the user's attention to any dangerous condition so as to render him responsible for continued use of the tractor.

In the case of *Heckel v. Ford Motor Co.*, 101 N. J. L. 385, 128 Atl. 242, 39 A. L. R. 989, the court of errors and

appeals of New Jersey affirmed a judgment in favor of the plaintiff, based upon injuries which, it was contended, were occasioned by a defect in a tractor and a tractor pulley, also purchased from the defendant for use in connection with the tractor. It appeared that there was evidence showing an old break in the pulley, which indicated that the construction thereof was defective.

In the case of *Burkett v. Studebaker Bros. Mfg. Co.,* 126 Tenn. 467, 150 S. W. 421, the supreme court of Tennessee held that the manufacturer of a carriage was not liable to the purchaser thereof, who was injured by some defect in the appliance. It appeared that, the first time the carriage was used, one of the wheels broke down, all the spokes having broken off at the hub. Testimony indicated that the wood of which the spokes were made was inferior. In the course of its opinion, the court said:

"It is clear, under the great weight of authority, that the manufacturer, when the article is not imminently dangerous, can be held liable to a third party only when he knew of the defect, and with this knowledge put the article upon the market."

The trial court directed a verdict in favor of the defendant, from which the plaintiff appealed to the court of civil appeals, which reversed the judgment. The defendant then took the case before the supreme court of Tennessee by certiorari, and that court reversed the judgment of the court of appeals, and affirmed the judgment of the trial court in favor of the defendant.

In the case of *Johnson v. Cadillac Motor Car Co.,* 261 Fed. 878, 8 A. L. R. 1023, the circuit court of appeals reversed a judgment entered by the district court in favor of the defendant, in a case tried to the court without a jury, holding that the plaintiff had suffered injuries because of a defective wheel of an automobile. It appeared that the wheel which broke was defective,

in that the spokes were not sound; the trial court having found that the defendant carelessly and negligently failed to reasonably inspect and test the same. The circuit court of appeals held that the case was analogous to that of the manufacturer of unwholesome food, saying:

"It is every bit as dangerous to put upon the market an automobile with rotten spokes as it is to send out to the trade rotten foodstuffs."

The poisonous food cases are not analogous to the situation presented in the case at bar.

The three cases last referred to, cited by appellant, do not support appellant's contention that respondent, in the case at bar, may be held liable to appellant by the trier of the fact, upon the ground that the truck which appellant purchased was defectively planned or constructed. In the cases in which the manufacturer was held responsible, liability was predicated upon some defect in the particular machine sold, which defect should have been discovered by reasonable inspection thereof. The case of *Goullon v. Ford Motor Co., supra,* is more nearly in point, but presents some different questions, which distinguish the case from that at bar.

The trial court properly held that respondent was entitled to judgment in its favor as matter of law.

The judgment appealed from is affirmed.

STEINERT, C. J., BLAKE, and ROBINSON, JJ., concur.

MILLARD, J. (concurring in the result)—I concur in the result on the ground that appellant's contributory negligence, as a matter of law, bars recovery.