Ernest E. PARKER and Walter J. Hagen,
Jr. (Plaintiffs), Appellants,

v.

FORD MOTOR COMPANY, a Corporation
(Defendant), Appellant,

Stanley Clark, Oscar Clark, James R. Clark,
d/b/a Clark Motor and Tractor Sales
(Defendants), Respondents.

No. 45098.

Supreme Court of Missouri.

Division No. 2.

Nov. 12, 1956.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 10, 1956.

Alexander & Robertson, Ernest E. Baker, St. Louis, Barnes & Barnes, Latney Barnes, Mexico, for appellant Ford Motor Co.

Rendlen & Rendlen, Branham Rendlen, Albert L. Rendlen, Hannibal, for respondents, E. E. Parker and Walter J. Hagan, Jr.

BARRETT, Commissioner.

In this action against Ford Motor Company Ernest E. Parker has been awarded $19,000 for personal injuries and Walter J. Hagen has been awarded $1,800 for the destruction of his truck. In substance, the alleged cause of the loss and injury was that Ford Motor Company was negligent in the manufacture of the truck in that the left rear axle housing, which the company failed to properly test and inspect, was made of defective steel, the specific defect being that it was "made of steel the grain size of which was greater than and in excess of the grain size of steel customarily used in left rear axle housings," with the consequence that the axle housing collapsed and caused the truck to overturn, thereby injuring Parker and virtually destroying the truck.

Upon this appeal the Ford Motor Company does not question the applicability of

the general rule and its duty to carefully manufacture and test the truck. Annotations, 164 A.L.R. 569, 156 A.L.R. 479; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. It does claim, however, that its motions for a directed verdict should have been sustained because (a) there was "no substantial evidence * * * that the axle housing broke and caused the truck to go into the ditch and overturn" and (b) there was "no substantial evidence * * * that the steel in the axle housing was defective or that defendant could have discovered any defect by reasonable test of the axle housing." If for these reasons Ford Motor Company is not entitled to be discharged of liability in this action it is urged that it is entitled to a new trial for the reasons that the trial court prejudicially erred in instructing the jury and in limiting the appellant's examination and cross-examination of certain witnesses. Upon the essential merits of the cause of action and the appellant's right to a directed verdict it should be carefully noted that the opinion is precisely limited to the quoted assignments of error, arguments and theories advanced upon the appeal.

■ Ford Motor Company manufactured the 1949 1½-ton F-5 truck and sold it to an authorized dealer, the Kirksville Motor Company, who in turn sold it to another dealer, Clark Motor and Sales Company at Monroe City. On February 8, 1949, the Clarks sold the truck to Walter Hagen who immediately put it to use on his 110-mile milk route in Shelby and Monroe counties. Six months and twenty-three days later, August 31, 1949, about 6:30 a. m., while Parker, Hagen's milk route employee, was driving the truck at a speed of 40 to 45 miles an hour on Highway 15 the truck overturned. The truck, according to the witnesses, overturned twice if not three times and came to rest in a ditch on the left or west side of the road. It was the appellant's position and theory that the axle housing did not break or the wheels separate from the truck on the highway

but that the truck skidded on the black top, as shown by marks on the pavement, and that the axle housing broke from the force of the blow when the truck skidded or turned over in the ditch with the weight of the truck and its load on the left rear wheels. In short, it is Ford's position that the accident broke the axle housing. Certain of the evidence is carefully examined in detail and it is said, because of the distortion of the broken axle housing, that the physical facts disprove that the axle housing broke on the highway and that the plaintiffs' "circumstantial evidence" is not sufficient or "substantial" and leaves the fact or inference of where and why the axle housing broke in the realm of speculation and conjecture. Another inference the appellant would draw is that the truck struck a culvert before it began running to the left and off the highway. But this version is not the most favorable view of the evidence. Parker and witness Jones said that the truck did not hit the culvert or any other object before it began pulling to the left and both of them said that the truck turned over on the pavement and left shoulder before going into the ditch. It is not necessary to lengthen this opinion by detailing and analyzing all the circumstances and demonstrating; it is sufficient to state that from the plaintiffs' evidence the jury could reasonably find that the left rear axle housing broke and the truck turned over on the highway before sliding off into the ditch, in short, that the wreck did not break the axle housing. Wallace v. Herman Body Co., 349 Mo. 1093, 163 S.W.2d 923; Spencer v. Madsen, 10 Cir., 142 F.2d 820.

In arguing the second point, that there was no substantial evidence that the steel in the axle housing was defective or that the defect could have been discovered by reasonable test, the appellant again urges that the plaintiffs' evidence "is too much in the realm of speculation to permit the jury to find negligence" on the part of Ford Motor Company in these two particular respects. The axle housing broke "just back

of the rear bearing," the break was more or less "straight," and with the left rear dual wheels separated from the truck the edge or rim of the axle housing was exposed. To show that the axle housing was defective the plaintiffs first had two automobile mechanics describe the appearance of the exposed metal. One of the mechanics said, "Well, it looked rough, looked like little particles, little balls of material there, oh, something like the size of lead in a standard lead pencil around the end of this place right here (pointing to a photograph). * * * It was a haggard, rough surface. * * * It had the grainy appearance, that's right. * * * It was, well, I don't know in terms of speaking if it would be grainy, it would be more or less rough like heavy sandpaper." The other mechanic said, "Well, the break was more or less even but I would call it honey combed. It wasn't a smooth break like it had been sawed off, but it was what you would call a rough break, but not jagged. * * * Well, just more or less, kind of grainy looking is about the only way I can describe it, just coarse metal, I would say." He said that it was "por*us*" and that the grain was "the size of probably a shot gun shot, about that size, and pretty much the same size."

The broken axle housing was photographed, particularly the exposed broken edge, and the photographs were enlarged and examined by the plaintiffs' expert witness, a professor at Washington University. He compared the grain size of the steel in the photographs with the grain size shown in a photograph (in a textbook) of a set of Shepherd fracture bars. He testified that from the photographs he was able to and did measure the grain size of the steel in the axle housing. (One of the appellant's experts, an experienced metallurgist and teacher, said that it was not possible to determine the grain size of the steel in the axle housing from the enlarged photographs.) But again, it would serve no useful purpose to set forth his testimony in detail. In substance, he testified that the grain size of the steel in the broken axle housing was "from 3½ to six times as large as the very coarsest ones shown in the ASTM (American Society for Testing Materials) or by the Shepherd (test)." Ford purchased axle housings from two manufacturers (no one knows which one was used in this truck) but did not specify the grain size of the steel; it did specify A.I.S.I. (American Iron & Steel Institute) 1039 to 1043 steel which, according to the witness, should contain a grain size of 6 or 7 for the 1039 steel and 4 or 5 for the 1040 steel. He stated that the granularity shown on the photographs was "far in excess to any of these numbers * * * ten times as coarse as the granularity that you would ordinarily expect to find in steels specified in this statement here." He said that coarse grained steel had a greater tendency to become "embrittled," to warp, and was subject to "quenching cracks." It was his opinion that steel of the grain size he found in the photograph of the axle housing "would be quite a risk, * * * not very dependable." He said, "I pointed out that in my opinion I felt that because of the very coarse granularity in this steel, that this was a defective piece of steel, or type of steel that should not have been used for this purpose." In answer to a hypothetical question it was his opinion that the steel was defective "And that the break must have occurred because of the defective steel." Ford Motor Company made several tests of the axle housings used, for various purposes, but it did not make grain tests and it was the opinion of plaintiffs' expert that the tests made would not reveal the grain size of the metal. He also testified that "this is a test that can be made very quickly, and very easily, with precision and provide a great deal of very valuable information * * *."

■ While the plaintiffs' evidence, both lay and expert, is not conspicuously impressive, it is not plainly demonstrable upon this record that the expert's opinions are wholly without foundation in point of fact, Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844; Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615, nor

may it be confidently said as a matter of law that the evidence is so insubstantial and lacking in probative force as not to sustain the issues of fact. Ducoulombier **v.** Thompson, 343 Mo. 991, 124 S.W.2d 1105. Nor, in this connection, may it be said as a matter of law that this particular expert was so obviously lacking in outstanding qualifications that the trial court abused its discretion in permitting him to testify. Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 190 F.2d 825. As indicated in the beginning, Ford Motor Company does not question its duty as a manufacturer or the fact that the axle housing was "imminently dangerous" if defectively manufactured. MacPherson v. Buick Motor Co., supra. The submitted, contested issues upon this phase of the case were whether the axle housing was defective and whether reasonable tests would have revealed the defect. In these circumstances it may not be said as a matter of law that the 18,000 miles' use of the truck on a milk route demonstrated that the housing was not defective or that a reasonable test would not have revealed the defect. Wallace v. Herman Body Co., supra; Willey v. Fyrogas Company, 363 Mo. 406, 251 S.W.2d 635. Compare: Tayer v. York Ice Mach. Corp., 342 Mo. 912, 119 S.W.2d 240. Upon the contested issues of defective steel by reason of improper grain size (Spencer v. Madsen, 10 Cir., 142 F.2d 820, a case involving a defect of grain size of steel in an axle) and failure to reasonably test, the permissible inferences and negligence in these respects were for the jury to resolve. Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910; General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320; Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122; Wallace v. Herman Body Co., supra; Willey v. Fyrogas Co., supra.

In connection with the merits of the case it is urged that the trial court unduly limited the cross-examination of plaintiffs' expert witness, particularly with respect to the removal of stresses in metal by a normalizing process of heat treatment, and also that the court prejudicially erred in restricting the appellant's examination of its expert witness on the same subject. In response to these contentions plaintiffs' counsel insist here, as they did in the trial court, that by reason of Ford Motor Company's answers to interrogatories the issues were narrowed and that the answers "are admissions against it, and are prima facie binding and conclusive" and therefore the court properly limited the examination of the witnesses. Answers to interrogatories may constitute admissions for certain purposes, State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907, but we are unable to find anything in the statutes concerning interrogatories, V.A.M.S. §§ 510.020, 510.060, that has anything to do with limiting the cross-examination of an expert witness. Plaintiffs' counsel misapprehend the force and effect of the statutes and the answers in this respect, 27 C.J.S., Discovery, § 67(b), p. 97 and the trial court erroneously followed counsel's suggestion as to their own and the appellant's experts. Plaintiffs' expert was an overly anxious witness, positive and dogmatic upon several very doubtful and extremely important matters and the appellant was entitled to cross-examine him fully in any reasonable respect that would test his qualifications, credibility, skill or knowledge and the value and accuracy of his opinions. 58 Am.Jur., Secs. 844, p. 473, 856, p. 485. It is not demonstrated upon this record, however, that the errors were so unfairly prejudicial as to demand the granting of a new trial. V.A.M.S. § 512.160. The record of 960 pages in this case is unnecessarily long and repetitious, particularly upon redirect examination of witnesses, and the jury undoubtedly heard and understood all the technical evidence concerning steel and axle housings that a lay jury could well absorb or apply and in these circumstances it may not be said that the trial court unjustly abused its discretion in restricting either the direct or cross-examination of

these two witnesses. 58 Am.Jur., Sec. 672, p. 367; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598. And so it is with respect to the cross-examination of plaintiff Hagen and whether the truck had been overloaded, the subject was fairly well exhausted and there was no evidence that it had been overloaded.

■ The appellant also urges that it is entitled to a new trial because the court abused its discretion in limiting the cross-examination of "witnesses on the issue of their interest and relationship to plaintiffs, which bore upon their credibility." This vague assignment has to do with the fact that after the truck and axle housing had been stored in a garage and after they had been photographed at plaintiffs' instigation the truck and the axle housing vanished and, of course, Ford Motor Company did not have an opportunity to inspect or examine them. In its argument appellant asserts that the truck was insured in a certain liability insurance company which was subrogated to Hagen's rights and that its adjuster disposed of the truck and broken parts. Of course, if there was any evidence concerning this matter, especially if the parts were disposed of for some improper motive and could have been traced and found it would have been most important and material and the evidence would not have been properly excluded for the factitious reason now assigned that it was an attempt to "inject an insurance company in the evidence." Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702; annotation 4 A.L.R.2d 761, 775–782. But, the insuperable difficulty with the appellant's contention is that there is no proof and there are no offers of proof in this record to support its assertions in these respects, and again it may not be said that the trial court unfairly abused its discretion in limiting the cross-examination.

■ And finally it is urged that the appellant is entitled to a new trial because the court prejudicially erred in giving the jury instructions P–1 and P–3. Despite the fact that appellant previously urged that plaintiffs' "circumstantial evidence" was not sufficient or substantial in proof of whether the axle housing broke on the highway, it is now urged that instruction P–3 on the subject of circumstantial evidence should not have been given because "there were no facts proven upon which circumstantial evidence of defendant's negligence could be based." Whatever objections and hazards there may be to this type of an instruction in a civil case (1 Raymond, Instructions, Sec. 128), this instruction was not prejudicially erroneous for the reason now assigned. It is urged that instruction P–1 is prejudicially erroneous in that it conflicts with other correct instructions given at the request of the appellant, that it imposes the duty of an insurer and does not require a finding of negligent failure to exercise ordinary care in the manufacture, inspection or testing of the axle housing. Then it is urged that the instruction is broader than the evidence with respect to six specific issues; for example, of good care of the truck after its purchase, whether there was any defect in the metal due to grain size, on the issue of failure to test, on defendant's manufacture of the axle housing, on the ability of the defendant to discover grain size and on the issue of customary grain size of axle housings on other similar trucks. The instruction is three full pages in length and it is not necessary to set it out in this opinion or to again review the evidence in detail and demonstrate, as indicated, that there was evidentiary support for the essential issues, all of which were hypothesized in the instruction. As to the latter objection it is sufficient to say that the instruction is adequately detailed and is not so much broader than the evidence in the six respects specified or, in short, so erroneous in a matter "materially affecting the merits of the action", V.A.M.S. § 512.160, that this court should grant a new trial. Brooks v. St. Louis Public Service Co., Mo., 275 S.W.2d

252, 256. It is not pointed out in what respect or with which of appellant's given instructions instruction P–1 conflicts. The instruction goes into great detail as to specific matters but as to the appellant's duty in general the instruction says, " * * * you are instructed that defendant Ford Motor Company was under a duty to manufacture said left rear axle housing from materials which were not defective as herein described, if so, and to test the same, if so, and if you find and believe from the evidence that defendant Ford Motor Company manufactured said left rear axle housing from materials which were defective as herein described, if so, and failed to test the same, if so, * * *" and that is an adequate hypothesization of the appellant's general duty and does not in terms impose the liability of an insurer. Compare: McLeod v. Linde Air Products Co., supra, and Willey v. Fyrogas Company, supra.

■ The action was instituted against Ford Motor Company and Stanley Clark, Oscar Clark and James R. Clark, doing business as Clark Motor and Tractor Sales, but at the close of plaintiffs' evidence the trial court directed a verdict in favor of the Clarks. The plaintiffs filed a notice of appeal as to the Clarks but they have not otherwise perfected the appeal and therefore the Clarks' motion to dismiss the appeal. as to them is sustained. The judgment as to Ford Motor Company is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

EAGER, P. J., STORCKMAN, J., and STONE, Special Judge, concur.

LEEDY, J., not sitting.