[No. 37816.  Department Two.  June 16, 1966.]

LAMONT PULLEY *et al.*, *Respondents*, v. PACIFIC COCA-COLA BOTTLING COMPANY *et al.*, *Appellants.**

*Reported in 415 P.2d 636.

*Horace G. Geer*, for appellants.

*Sterbick, Manza, Moceri & Sterbick*, by *Michael S. Manza* and *Henry M. Haas*, for respondents.

FINLEY, J.—Foreign matter occasionally found, or allegedly found, in bottles of Coca-Cola is a perpetual provoker of legal controversy. The nature of the foreign or deleterious material allegedly ingested by consumers has ranged from the expectable to the totally unpredictable. Thus, despite the investment of large sums of money, manpower, and scientific expertise, the manufacturers of this carbonated beverage apparently have as yet been unable to develop a bottling or manufacturing process which is *infallible* in terms of the purity and wholesomeness of the manufactured product. Lawsuits by consumer-plaintiffs have involved such incidents as alleged swallowing of pieces of broken glass,[1] or unconsumed portions of a bottle containing residual matter such as a rusted bottle cap and dirt.[2] But "the pause that refreshes" has also been rudely disturbed by the asserted discovery of such bizarre objects as a dead mouse,[3] "three dead flies and other foreign matter,"[4] and even a "dead oriental cockroach."[5] By comparison, the cigarette allegedly involved in the instant case would seem relatively innocuous.

---

[1]*Tedder v. Coca-Cola Bottling Co. of Darlington*, 224 S.C. 46, 77 S.E.2d 293 (1953).

[2]*Wilson v. Coca Cola Bottling Co. of New York*, 3 N.J. Super. 102, 65 A.2d 630 (1949).

[3]*Lundquist v. Coca Cola Bottling, Inc.*, 42 Wn.2d 170, 254 P.2d 488 (1953).

[4]*Jordan v. Coca Cola Bottling Co. of Utah*, 117 Utah 578, 218 P.2d 660, 52 A.L.R.2d 108 (1950).

[5]*Oklahoma Coca-Cola Bottling Co. v. Dillard*, 208 Okla. 126, 253 P.2d 847 (1953).

The plaintiff-respondents herein, husband and wife, purchased a carton of six "king-size" bottles of Coca-Cola from the defendant-appellant retailer, Lucky Stores, Inc., on the night of May 24, 1962. The respondents went home immediately and placed the six-pack carton on its side in the family refrigerator. On the following day, Mrs. Pulley removed an apparently sealed bottle from the refrigerator, uncapped it, and took a swallow. She noted that the beverage seemed to have an odd taste, but she took a second swallow. At the trial Mrs. Pulley described her reactions as follows:

Immediately thought this tasted like, it didn't taste like coke, it tasted like tobacco or tobacco smoke, and it was bitter, and it was a little slimy.

Mrs. Pulley examined the remaining contents of the bottle. She noticed a cigarette and floating bits of loose tobacco. Immediately thereafter, she became violently ill. During the course of her ensuing 3-day period of intermittent regurgitation and nausea, she unfortunately lost her dentures in the commode!

The plaintiffs subsequently brought this action against the retailer, Lucky Stores, Inc., and the bottler, Pacific Coca-Cola Bottling Co., on a theory of breach of an implied warranty of fitness for human consumption. At the close of the plaintiff's case, the defendants made an offer of proof concerning the modern methods utilized by the defendant bottler to prevent contamination by foreign objects or material. The trial court refused to allow such testimony; whereupon, the defendant rested its case. The jury returned a verdict in favor of the plaintiffs in the amount of $2,100.

The defendants, who may be considered as one party for purposes of this appeal, have made four assignments of error in support of their contention that the case should be remanded for a new trial. The first assignment of error is directed to the trial court's admission into evidence of exhibit No. 2: the bottle from which the plaintiff, Dorothy Pulley, drank. The defendants' theory in this respect is that substantial changes had occurred in the bottle's contents between the date of the traumatic event (May 25;

1962) and the time of trial (June 2, 1964). In particular, the defendants assert that the jury's verdict might well have been influenced by the amount of fungi and mold in the liquid which then remained in the bottle, emphasizing that the volume of liquid had evaporated and substantially decreased. We have always vested in the trial court a wide latitude of discretion in the determination of whether or not to admit so-called "real evidence." *Kiessling v. Northwest Greyhound Lines, Inc.*, 38 Wn.2d 289, 229 P.2d 335 (1951). The best statement of the rule as to the effect of a change in condition in proffered evidence is that found at 95 A.L.R.2d 696, § 6[a]:

> It has been generally held that at the time a sample is offered in evidence, it must be shown that it is in the same or substantially the same condition it was in at the time such condition became material to the issues involved; *however, the fact that the offered sample has undergone some change in condition, whether occasioned by lapse of time or otherwise, may not of itself afford sufficient grounds for excluding it.* The change may not be considered material to the fact sought to be established; the nature of the object or substance may be such *that if men of ordinary knowledge were informed of all the circumstances surrounding the change, they would be able to determine from the sample's present appearance, with reasonable accuracy, what its condition was at the time pertinent to the issue involved;* or the court may decide that the exhibit should go to the jury with all the other evidence in the case, the matter of change in condition affecting the weight to be accorded such evidence rather than its admissibility. (Italics ours.)

There was testimony in the instant case sufficient to explain to the jury the changes that had taken place in the contents of the bottle. Plaintiffs made no attempt to demonstrate or to infer that Mrs. Pulley had consumed all of the missing portion of the beverage. Furthermore, Mrs. Pulley testified that the Coca-Cola she did consume "was a little slimy"—*not* that the liquid was permeated with the fungus-like growth present at the time of trial. Thus, we are not persuaded that the trial court abused its discretion in admitting the bottle and its contents into evidence.

■ The appellants' second assignment of error raises the same basic considerations with respect to the trial court's admission into evidence of the testimony of Dr. Charles P. Larson. Dr. Larson, a pathologist, testified as an expert witness on the basis of an examination he made of the bottle's contents on May 25, 1964—two years after the original consumption of a portion of its contents by Mrs. Pulley. Again, appellants' principal objection to the admission of such testimony concerns the allegedly substantial and material changes which had taken place in the contents of the bottle. But both the questions of plaintiffs' counsel and the answers of the expert witness reflected an attempt to explain to the jury what changes had occurred in this unique mixture of Coca-Cola, tobacco, and fungus-like growth. The defendants have not been able to point out with any degree of specificity any portion of Dr. Larson's testimony which was prejudicial to them in the sense that it could have misled the jury by equating the composition and quantity of the bottle's contents at the date of trial with the date of consumption. Furthermore, the defendants make some attempt to imply that the hypotheticals propounded to Dr. Larson incorporated facts not substantially supported by the evidence. That attempt is not supported by the record. In the absence of a clearly shown abuse of discretion by the trial court in allowing the use of expert testimony, we are not disposed to set aside its rulings as to the admissibility of this type of evidence. *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958).

■■ The appellants' third assignment of error concerns the exclusion by the trial court of the appellants' proffered testimony relating to the methods utilized by appellant Pacific Coca-Cola Bottling Company in processing and bottling its product. The gravamen of appellants' theory in this respect is that the exclusion of such testimony deprives them of their only possible defense. In other words, by the very nature of food products liability cases the manufacturers and/or the retailer will generally be unable to dispute by direct eyewitness testimony the alleged presence in the food product and the ingestion of a particular object

or deleterious substance. Frequently, the plaintiff will have consumed the product while alone or with members of the immediate family, and hardly ever when in the presence of strictly objective and disinterested witnesses. The appellants assert that their only possible course of action—and defense—is to impeach the credibility of the plaintiff's story by demonstrating the improbability of a foreign object escaping the assorted methods and techniques utilized to insure the wholesomeness of the finished product. Admittedly, the argument is persuasive. However, we must recall that the plaintiffs' theory of recovery is one of breach of warranty and not negligence. The proffered testimony as to the bottling methods employed would obviously be admissible if the question was whether or not Pacific Coca-Cola Bottling Company exercised due care in the manufacturing of its product. But the question is not whether Pacific Coca-Cola Bottling Company was negligent, but whether or not it and Lucky Stores, Inc., breached an implied warranty that the Coca-Cola was fit for human consumption. The implied warranty as to the wholesomeness of food or beverage in original packages is based upon reasoning and public policy considerations to the effect that manufacturers and retailers of food products have a duty to consumers, *i.e.*, the general public, to provide adequate protection from the harmful effects of foreign objects. *Connell v. Norton Coca-Cola Bottling Co.*, 187 Kan. 393, 357 P.2d 804 (1960); *LaHue v. Coca Cola Bottling, Inc.*, 50 Wn.2d 645, 314 P.2d 421 (1957). An assertion of breach of warranty by a consumer-plaintiff, and that he or she was harmed by the presence of some foreign object in food or drink, in practical effect thrusts a burden upon the defendant manufacturer and the defendant retailer to show who contaminated the particular food product—and will not permit a showing by indirect and circumstantial evidence that it was improbable or even impossible that the defendants were responsible for the presence of the harmful object. *Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P.2d 633 (1957).

It is thus our view, under the existing authorities,

that the trial court properly excluded the proffered evidence as to the bottling methods utilized by the defendant bottling company. One cannot impeach the credibility of an opposing party's testimony by testimony collateral to the issues of the case. *O'Neil v. Crampton*, 18 Wn.2d 579, 140 P.2d 308 (1943). The proffered testimony was collateral because it was not directly refutative of the plaintiff's relation of the incident involved. The appellants made no claim as to the infallibility of their particular bottling process. They attempted to demonstrate that it was *highly improbable* that a cigarette could have found its way into a bottle of "king-size" Coca-Cola in the absence of tampering by a third party. Obviously, the appellants were unable to disprove the presence of the cigarette. The ultimate question is whose *inadvertence* or *intentional act* produced the uncontroverted contamination of the bottle of Coca-Cola. As a matter of public policy the burden of proof in this respect is placed by law upon food manufacturers and retailers and not upon the consumer. The particular evidence of the appellants was properly excluded.

The judgment of the trial court should be affirmed. It is so ordered.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and LANGENBACH, J. Pro Tem., concur.