[No. 39053.     En Banc.     March 20, 1969.]

ANN ULMER, *Appellant,* v. FORD MOTOR COMPANY,
*Respondent.** ·

*Reported in 452 P.2d 729.

*Levinson & Friedman, Sam L. Levinson,* and *Ronald J. Bland,* for appellant.

*Merrick, Burgess & Hofstedt, Donald R. Douglas,* and *H. Roland Hofstedt,* for respondent.

Rosellini, J.—This is a suit against the manufacturer of an automobile which crashed against a concrete abutment as a result of which collision the plaintiff, a passenger, was injured. It was alleged in the complaint that the accident was caused by a defect in the automobile, for which the defendant manufacturer was responsible. The plaintiff appeals from a judgment entered on a verdict of the jury in favor of the defendant.

Error is assigned to the giving of a number of instructions. The first instructions complained of imposed upon the plaintiff the burden of proving negligence on the part of the defendant. The plaintiff's position is that it was only necessary for her to establish that the automobile, as manufactured by the defendant, was dangerously defective, and that the accident in which she was injured was attributable to the defect in the automobile.

The plaintiff's expert witness testified that a defectively installed "A-frame" pivot bolt had come loose, allowing the "A-frame" to drop and thereby render it impossible for the driver to control the direction in which the automobile was moving. She offered no evidence of any negligent act on the part of the defendant, unless it can be said that the fact of the defect raised an inference of negligence.

The defendant, on the other hand, offered testimony that it exercised care in the manufacture of its automobiles and that the bolt would have come loose much sooner than it did if it had been improperly installed at the factory.

The trial court gave the following instruction requested by the plaintiff:

## Instruction No. 6

A manufacturer of an automobile is liable to any person if such person is injured due to a manufacturing defect in such automobile.

If you find that there was a defect in the manufacture of the automobile which existed at the time of the sale to Mr. Smith, and the plaintiff was injured as a proximate result of such defect, then I instruct you to find for the plaintiff and against the defendant.

This instruction, standing alone, makes the manufacturer strictly liable for harm caused by manufacturing defects in the product. However, the trial court also gave the following instructions to which error is assigned:

## Instruction No. 5

"Negligence" is the failure to exercise reasonable care, and by the term "reasonable and ordinary care" is meant that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions. Negligence may consist in the doing of some act which a reasonably prudent person would not do under the same or similar circumstances, or the failure to do something which a reasonably prudent person would have done under the same or similar circumstances and conditions.

## Instruction No. 7

You are instructed that the duty of a manufacturer is to exercise reasonable care in the manufacture of an article which unless carefully made he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it was manufactured. If the manufacturer fails to exercise this reasonable care, he is liable for bodily harm caused to those who lawfully use the article in a manner and for a purpose for which it was manufactured.

## Instruction No. 8

You are instructed that in determining whether or not a failure to exercise reasonable care by the Ford Motor Company, if any, was a proximate cause of the plaintiff's

injuries, you may take into consideration the number of years that elapsed between the time of the sale of the vehicle and the accident, and the number of miles that the vehicle travelled during that period of time.

It is the contention of the plaintiff that she did not try her case upon the theory of negligence, that she did not offer evidence of negligence, and that the trial court improperly placed upon her the burden of proving what negligence of the defendant, if any, caused the defect in the installation of the pivot bolt. It is her theory that her right to recover was established if she showed that there was a defect and that it caused the accident in which she was injured.

This court has held that when the manufacturer of food products places upon the market products which are contaminated or impure, it is liable to any person who is injured thereby. The theory of liability has been that there is a warranty implied in law (and not dependent on the warranty provisions of the Uniform Sales Act, RCW 63.04.160[1]) that such food products are fit for consumption. *Pulley v. Pacific Coca-Cola Bottling Co.*, 68 Wn.2d 778, 415 P.2d 636 (1966); *LaHue v. Coca Cola Bottling Co.*, 50 Wn.2d 645, 314 P.2d 421 (1957); *Nelson v. West Coast Dairy Co.*, 5 Wn.2d 284, 105 P.2d 76, 130 A.L.R. 606 (1940). The warranty is not dependent on contract, does not require privity, and is available to all who may suffer damage by reason of the product's use in the legitimate channels of trade. It extends to a retailer whose business reputation is damaged because of the manufacturer's breach of duty. *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633 (1913).

A similar liability has been imposed by this court on manufacturers of other products which have caused injuries. In *Esborg v. Bailey Drug Co.*, 61 Wn.2d 347, 378 P.2d 298 (1963), we held that the manufacturer of a hair coloring product impliedly warranted that his product was

[1]RCW 63.04.010 through 63.04.780 was repealed by the legislature effective June 30, 1967 by § 10-102 of the Uniform Commercial Code, Laws of 1965 Ex. Ses. ch. 157 (Title 62A RCW) which took effect on that date.

fit for use for its intended purpose. We held further in that case that the manufacturer would be liable to the plaintiff even though she was allergic or hypersensitive to the product, if she could show that the product contained a harmful ingredient, that the ingredient was harmful to a reasonably foreseeable and appreciable number or class of potential users, and that she was innocently injured while using the product in the manner and for the purpose intended. In other words, we held that the manufacturer would be liable if the product carried with it an unreasonable risk of harm to potential users, even when carefully manufactured.

In *Brewer v. Oriard Powder Co.*, 66 Wn.2d 187, 401 P.2d 844 (1965), we held that a manufacturer of dynamite impliedly warranted to the *employee* of a purchaser that the product was fit for use for its intended purpose. In *Brown v. General Motors Corp.*, 67 Wn.2d 278, 407 P.2d 461 (1965), we held that, where the plaintiff's evidence tended to show that the wheels of an automobile manufactured by the defendant became locked due to defective manufacture, or a foreign object in the power vacuum unit, it was proper to submit the issues to the jury on the theory of implied warranty.[2]

In *Baxter v. Ford Motor Co.*, 168 Wash. 456, 462, 12 P.2d 409, 88 A.L.R. 521 (1932), we permitted recovery against a manufacturer who had made express representations about the non-shatterable glass in its windshield in its advertising matter, although there was no privity between the manufacturer and the consumer. This court said:

> The rule in such cases does not rest upon contractual obligations, but rather on the principle that the original act of delivering an article is wrong, when, because of the lack of those qualities which the manufacturer represented it as having, the absence of which could not be readily detected by the consumer, the article is not safe

---

[2]The trial court in that case instructed the jury that there was no evidence of negligence, and that it was not incumbent upon the plaintiff to prove negligence. The plaintiff assigned error to the court's failure to give his requested instructions on negligence, but we held that such instructions would not have enhanced the plaintiff's case.

for the purposes for which the consumer would ordinarily use it.

Since these cases were decided on a theory of warranty, in none of them was the plaintiff required to prove negligence on the part of the defendant. It is true that this common law implied warranty is grounded in tort, rather than contract, and that the element of foreseeability is often discussed in the cases; but it was not suggested in any of them that the burden is on the plaintiff in such a case to prove that the manufacturer did something which a reasonably prudent manufacturer would not have done, or that it failed to do something which a reasonably prudent manufacturer would have done.

On the contrary, in *Pulley v. Pacific Coca-Cola Bottling Co., supra,* we held that the trial court properly excluded evidence offered by the defendant to show that it exercised great care in its bottling process, saying that its care or lack of care was not at issue. And in *Brown v. General Motors Corp., supra,* we observed that the theory of implied warranty carries with it an "omen of liability without fault."

Concurrently with these decisions, this court has recognized the applicability of negligence principles in other cases. *Bock v. Truck & Tractor, Inc.,* 18 Wn.2d 458, 139 P.2d 706 (1943) (negligent overhauling by second-hand dealer); *Sutton v. Diimmel,* 55 Wn.2d 592, 349 P.2d 226 (1960) (defective brake fluid hose); *Reusch v. Ford Motor Co.,* 196 Wash. 213, 82 P.2d 556 (1938) (alleged defect in construction of auto truck, judgment for defendant affirmed on ground of insufficient evidence of causation).

We have said that recovery may be had on either theory. *Brown v. General Motors Corp., supra; Nelson v. West Coast Dairy Co., supra.* We have also implied, for example, in *Wise v. Hayes,* 58 Wn.2d 106, 361 P.2d 171 (1961), and in *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 725, 393 P.2d 936 (1964), that the two are indistinguishable. In the latter case, the plaintiff, a 10-year-old boy, was injured when he crashed through a glass door which had been manufactured by one of the defendants. Insofar as the opinion reveals,

the only evidence of negligence was the condition of the door itself. In regard to the liability of that defendant, we said that the theory was one of breach of implied warranty, sounding in tort rather than contract. This court said:

Was the 3/16 inch Belgian crystal glass door inherently or imminently dangerous? Did Northwest exercise reasonable care to make the door safe for the use for which it was manufactured?

These questions must be resolved by the trier of the facts under the rule that:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured." Restatement, Torts § 395.

That case was tried upon a theory of negligence, as well as breach of warranty and it was not urged before this court that negligence instructions were improper. It was upon the basis of this case that the instructions given by the trial court in the case now before us were framed. It was the theory of the plaintiff, however, that our cases decided upon a theory of warranty actually support the proposition that the manufacturer is liable for harm caused by defects in his product, whether or not he has been negligent. The plaintiff did not choose to couch her theory in the language of warranty, but rather maintained that the law has now advanced to the point where the "warranty implied in law" may be recognized as a fiction and discarded. The liability imposed under this theory, she maintains, is a strict liability and does not depend on the fault of the manufacturer, nor does it have the attributes of a warranty. Her theory finds much support among the legal writers as well as some criticism. The arguments pro and con are cited in two articles by Dean William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J.

1099 (June, 1960), and *The Fall of the Citadel* (*Strict Liability to the Consumer*), 50 Minn. L. Rev. 791 (1966).[3]

In the second of these articles, Dean Prosser lists Washington among the 18 states whose courts have imposed strict liability without negligence and without privity, as to manufacturers of all types of products. The cases cited to support this conclusion are *Brewer v. Oriard Powder Co.,* supra; *Dipangrazio v. Salamonsen,* supra; and *Wise v. Hayes,* supra. In the *Brewer* case it was admitted that there was no evidence of any specific act of negligence, and the case clearly stands for the proposition that recovery may be had on a theory of breach of implied warranty without proof of negligence. In the other two cases negligence is discussed as a basis of recovery, but there is nothing in either opinion to indicate that there was any evidence of a specific act of negligence other than the inferences that can be drawn from the fact of a defective product. The same is true of other cases we have cited which have been decided upon a theory of implied warranty.

■ Dean Prosser discusses the fact that, when the courts came to the conclusion that strict liability should be imposed upon the manufacturer of defective products, they searched about for theories on which to justify it and came up with a number of strange ones; but the one winning the greatest number of adherents was that of implied warranty. He points out the difficulties attendant upon the adoption of this theory, which boil down to the fact that it is illogical to create an implied warranty but refuse to attach to it any of the customary incidents of a warranty. For examples, in this court-created warranty, there is no necessity of a contract or privity between the parties; no necessity that the purchaser rely on the warranty; no requirement of notice of the breach within a reasonable time after learning of it; and no provision for disclaimer. There is also the difficulty of reconciling the implied warranty with the Uniform Sales Act, which provides that there shall be no implied warranties other than those listed therein. (*See* RCW 63.04.160).

---

[3] *See also* S. Niibori and R. Cosway, *Products Liability in Sales Transactions,* 42 Wash. L. Rev. 483 (March 1967).

Dean Prosser says:

Although the writer was perhaps the first to voice it, the suggestion was sufficiently obvious that all of the trouble lay with the one word "warranty," which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the "warranty" was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort. Why not, then, talk of the strict liability in tort, a thing familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, libel, misrepresentation, and respondeat superior, and discard the word "warranty" with all its contract implications? The American Law Institute approved the proposal, and adopted, in the second Restatement of Torts, a new section, which states the strict liability without using "warranty":

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

A comment makes it clear that the rule stated is purely one of strict liability in tort; and that while there is nothing in the section which would prevent any court from giving it the name of "warranty," it must be understood that such a warranty is a very different thing from those usually found in the direct sale of goods, and that it is not subject to the various contract rules which have grown

up to surround such sales. (Footnotes omitted.) 50 Minn. L. Rev. 791, 802 (1966).

The comment referred to by Dean Prosser is as follows:

The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of consumption. The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, "warranty" must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort. Restatement (Second) of Torts § 402A, comment $m$ at 355-56 (1965).

Comment $a$ of that section reads, in part:

This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product.

As the comment states, the rule is not exclusive and does not preclude the plaintiff from suing on a negligence theory if he chooses.[4]

Section 402A, insofar as it pertains to manufacturers (and we are concerned in this case with a manufacturer only), is in accord with the import of our cases which have been

---

[4]Other comments of particular interest in a case of this kind are comments $c, d, g, i$ and $l$. *See* Restatement (Second) of Torts § 402A.

532

decided upon a theory of breach of implied warranty and we hereby adopt it as the law of this jurisdiction. Inasmuch as this court in some instances has not seen fit to imply a warranty on the part of the seller who did not manufacture or process the products,[5] and inasmuch as the liability of such a seller is not at issue in this case, we do not find it necessary to decide at this time whether this court should adopt a rule making sellers other than the manufacturer strictly liable for defects. Consequently, our decision to discard the terminology of "implied warranty" and adopt the language of strict liability contained in the Restatement (Second) of Torts § 402A, applies only to the liability of manufacturers.

Inasmuch as the plaintiff in this case did not choose to try her case on the theory that the defendant was negligent in manufacturing the automobile and instead chose to rest her case on a theory of strict liability, which is supported by our decisions (although admittedly not expressed as such therein), the trial court erred in giving instructions which tended to create, in the minds of the jury, the impression that it was necessary that the plaintiff prove such negligence. On a new trial, however, an instruction stating the rule according to Restatement (Second) of Torts § 402A (1965) should be given, rather than instruction No. 6, which does not make it clear that the manufacturer is liable only for defects which create an unreasonable risk of harm.

The defendant was entitled to an instruction on negligence as it pertained to the actions of the driver of the automobile, whose negligence the defendant claimed was the sole proximate cause of the accident; but on a new trial the court should advise the jury that the law expressed in

[5]See *Dipangrazio v. Salamonsen, supra* (In that case, however, the vendor was not in the business of selling and would not be subject to the terms of Restatement (Second) of Torts § 402A (1965). *See* comment f.); *Esborg v. Bailey Drug Co., supra; Baxter v. Ford Motor Co., supra; but see Pulley v. Pacific Coca-Cola Bottling Co., supra; Brewer v. Oriard Powder Co., supra; Ringstad v. I. Magnin & Co.,* 39 Wn.2d 923, 239 P.2d 848 (1952); *Nelson v. West Coast Dairy Co., supra.*

such instruction or instructions applies only to the claim of negligence on the part of the driver.

In regard to instruction No. 8, the plaintiff also complains that it amounted to a comment on the evidence. In it, the trial court told the jury that, in determining whether a failure to exercise reasonable care on the part of the defendant was a proximate cause of the accident, it could take into consideration the age of the car and the number of miles traveled. The plaintiff's expert witness testified that those factors would not be of much significance in determining whether the accident was caused by such a defect. The defendant's experts testified that they would indeed be significant. Since there was a conflict in the evidence, it cannot be said as a matter of law that the mileage and years of usage are factors affecting the likelihood there was a defect.[6]

■ The instruction tended to impress upon the defendant's evidence the stamp of judicial approval. It is prejudicial error to give an instruction which assumes as true the existence or nonexistence of any material fact in issue in respect of which the evidence is conflicting. *Ashley v. Ensley*, 44 Wn.2d 74, 265 P.2d 829 (1954). For this reason, as well as for the reason that it assumes the applicability of negligence principles, it was error to give the instruction.

■ The plaintiff also complains that the trial court erred in refusing to give her requested instruction embodying the concept that where the wrongful act of two or more persons combine to cause an injury, both are liable. The defendant says that negligence of the driver (allegedly in

---

[6]Proof of the prolonged injury-free use of the product prior to the occurrence of the injury is not sufficient to establish that it was not defective. 78 A.L.R.2d 499, *Hartleib v. General Motors Corp.*, 10 F.R.D. 380 (N.D. Ohio 1950) (truck was used 2 years before fly wheel broke); *Parker v. Ford Motor Co.*, 296 S.W.2d 35 (Mo. 1956) (truck was used for 6 months before axle broke). In a case involving an oil derrick which collapsed, the court said that prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether the negligent manufacturer proximately caused the harm. *Pryor v. Lee C. Moore, Corp.*, 262 F.2d 673 (10th Cir. 1958).

failing to apply the brakes) could not be foreseen.[7] If this be the fact, it is not within the judicial knowledge of this court. Negligence of another is not necessarily unforeseeable.

The defendant argues that the jury was adequately instructed on proximate cause. Our examination of the instructions, however, does not disclose any instructions or combination of instructions which would make it clear to the jury that it should hold the defendant liable if it found that a manufacturing defect was a cause of the accident, even though it might also find that negligence of the driver in operating the vehicle after the A-frame dropped was a contributing factor. *See Caylor v. B.C. Motor Transp., Ltd.,* 191 Wash. 365, 71 P.2d 162 (1937). Upon a new trial, assuming that the evidence is substantially the same as that presented in the first trial, an instruction embodying the theory of concurring fault should be given.

■ The defendant urges, in support of the judgment, that the plaintiff's evidence was insufficient to take her case to the jury. This argument is premised on a contention that the plaintiff's expert witness had not made an inspection which was thorough enough to enable him to give an intelligent opinion as to the cause of the collapse of the A-frame. This is a question of the weight to be accorded the opinion of the witness and was for the jury to decide. It cannot be said as a matter of law that his testimony was of no value.

The judgment is reversed and a new trial is ordered.

HUNTER, C. J., FINLEY, WEAVER, HAMILTON, and HALE, JJ., concur.

---

[7]Foreseeability would be a factor in determining whether the alleged defect created an unreasonable risk of harm; but it would not be pertinent in deciding whether the defect actually was a cause of the accident. It must be remembered that negligence of the defendant is not an element of the plaintiff's case, and those cases which hold that an intervening act which is not foreseeable removes the negligent defendant's conduct as a proximate cause of the injury are not applicable.

NEILL, J. (concurring)—I concur in the remanding of this case for a new trial, but do not go as far as the majority seemingly does in the application and construction of the strict liability doctrine enunciated in Restatement (Second) of Torts § 402A (1965).

Comment *g* to Restatement of Torts, *supra,* states at 351:

> The rule stated in this Section applies only where the product is, at the time it leaves the seller's [manufacturer's] hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller [manufacturer] is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.

This comment makes it clear that the plaintiff has the burden of proving (1) that there was a defect, (2) which existed at the time the product left the hands of the manufacturer, (3) which was not contemplated by the user, (4) which renders the product unreasonably dangerous, and (5) that such defect was the proximate cause of plaintiff's injury. This same concept is succinctly stated by the Illinois court when it adopted this rule of strict liability. In *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 623, 210 N.E.2d 182 (1965), that court said:

> Such liability does not, of course, make Bendix [manufacturer] an absolute insurer. The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the, manufacturer's control.

Further, there is no automatic causation which traces from the manufacturer to user—again, this is a matter of proof by the plaintiff. In *Shoshone Coca-Cola Bottling Co. v. Dolinski,* 82 Nev. 439, 443, 420 P.2d 855 (1966), wherein that court adopted this rule of strict liability, it is pointed out that

He [plaintiff] must still establish that his injury was caused by a defect in the product, and that such defect existed when the product left the hands of the defendant [manufacturer]. The concept of strict liability does not prove causation, nor does it trace cause to the defendant.

Therefore, instructions to be given on a retrial should clearly state these elements which plaintiff must prove.

Defendant has made a cogent argument on the relevance of the age and mileage of the automobile, a point covered by instruction No. 8. It should be understood that the omission of instruction No. 8 on a retrial does not, in any way, limit the right of the defendant to argue the age and mileage matter to the jury. Such argument is entirely proper under instructions as to plaintiff's burden to prove that a defect in the automobile existed at the time it left the hands of defendant manufacturer.

We should be cautious in adopting a rule of strict liability against a manufacturer who has, presumably, exercised all due and reasonable care to make an acceptable and reasonably safe product. Although I recognize this current development in American tort law, it should be made crystal clear that the adoption of this doctrine by us does not create a rule of absolute liability. The mere fact of a malfunction of a product is not sufficient to raise an inference that the necessary elements for strict liability are present.

HILL and McGOVERN, JJ., concur with NEILL, J.